[Civ. No. 7898. Third District. July 13, 1951.]

HORACE FONG et al., Appellants, v. RUBY MILLER, Respondent.

412

Harold L. Strom for Appellants.

Nat Brown, Sr., Nat Brown, Jr., and Brown & Hogan for Respondent.

VAN DYKE, J.—On January 1, 1946, Horace Fong and Fulton Fong, predecessor in interest of Lily Fong, entered into a contract with Ruby Miller. The contract recited that Miller was the owner of a café known as the Gate Inn, situated at Jackson, California, consisting of a bar for the sale of liquor, and a restaurant; that Miller desired to obtain the services of the Fongs to manage and operate the restaurant and that the Fongs were willing to undertake such services upon the following terms: That any additional equipment or construction added to the restaurant would be paid for by the Fongs, which additions would remain their property, except where the removal of them would damage the building in which they were located; that all licenses for the conduct

of Miller's business should be taken out and maintained in her name, but that the Fongs would pay to her as rental for the restaurant premises a sum equal to one half of the total of all license fees required for the operation of all businesses conducted upon the premises; that the Fongs would pay all expenses due to operation of the restaurant; that they should receive as compensation for their services all proceeds from the restaurant, and in addition thereto one fourth "of the net revenue derived from the operation of the bar and amusement machines." The Fongs improved the restaurant by spending over $4,000 in additional equipment and over $1,000 in constructing living quarters to be used by their help. They then began the operation of the restaurant as agreed upon. Differences arose between the parties and about two months after the Fongs moved in Miller locked them out. Treating this as an eviction from leased premises, the Fongs brought this action to recover the amounts so expended in connection with the restaurant and $15,000 additional, demanded as compensation for loss of prospective profits. At the trial of the action the Fongs waived their claim for damages for prospective profits. The parties stipulated that the "amusement machines" referred to in the contract which were being operated by Miller were in fact slot machines, punchboards, a roulette table and a blackjack table and that the term used in the contract was so understood. The trial court, deeming the contract to be tainted with illegality, denied relief to plaintiffs upon that ground. From the judgment entered that they take nothing plaintiffs present this appeal.

We think the trial court was correct in its analysis of the contract and in its conclusions that no relief could be granted appellants, notwithstanding the respondent's alleged wrongful acts. ■ As a general rule, to which there are exceptions, a party to an illegal contract can neither recover damages for breach nor by rescinding recover the performance that he has rendered or its value. (Restatement of the Law of Contracts, § 598; *Owens* v. *Haslett*, 98 Cal.App.2d 829, 833 [221 P.2d 252].) ■ Under certain conditions, notwithstanding that one is a party to an illegal bargain, relief may be accorded if such party be not *in pari delicto*, but we are unable to conceive how appellants here could claim that they occupied that innocent position. ■ Under the contract they were to operate the restaurant and to receive as their compensation therefor not only the profits from the restaurant, but in addition thereto a share of the profits from the bar

and from the gambling devices. What they did in operating the restaurant may have been honest enough, but when they agreed that they were to be given for their services 25 per cent of the profits derived from gambling they tainted their contract with illegality. This made it to their interest that the gambling should flourish in order that their profits therefrom might be enhanced. To say that such a consideration could be valid and that a contract requiring its payments would not be unlawful would be to say that a laborer might, because his labor was honest, lawfully agree that he should be paid from the profits of a crime which the parties contemplated his employer would engage in. The trial court correctly held that the appellants were *in pari delicto* and that the contract was unlawful and that the court should leave the parties where it found them.

■ Appellants argue that this contract possessed a dual nature and that one part of it, which they call a lease, could be completely separated from the unlawful agreement to receive a share in the profits of crime. But we think that the contract cannot receive such construction. Notwithstanding the agreement was to last for five years, with option for renewal for a second five years, and assuming that the appellants might lawfully receive the proceeds from the operation of the restaurant, it is yet quite clear from the terms of the contract itself that such profits were not the sole consideration moving to the appellants under the agreement. In addition to the profits from the restaurant, they were to receive a share in the profits of contemplated illegal action. That provision rendered the contract void. The contract made it clear that the consideration moving to respondent was the operation by appellants of the restaurant in connection with her liquor-selling and gambling business. "If any part . . . of several considerations for a single object, is unlawful, the entire contract is void." (Civ. Code, § 1608.)

■ Appellants urge that by waiving their claim for future profits and confining their demands to the cost of their added equipment and reconstruction they freed their contract of the taint of illegality. But these things did not change the nature of the contract nor relieve the appellants from the rule invoked against them by the trial court. Appellants bitterly complain that the court's action leaves the respondent unjustly enriched. The complaint is a familiar one and is generally made by those who, deeming themselves wronged by their companions in illegal ventures, find themselves denied

any right to enforce their unlawful agreements. Their pleas have always been unavailing. "This rule is not generally applied to secure justice between parties who have made an illegal contract, but from regard for a higher interest—that of the public, whose welfare demands that certain transactions be discouraged." (*Takeuchi* v. *Schmuck*, 206 Cal. 782, 786 [276 P. 345]; see, also, *Lee On* v. *Long*, 37 Cal.2d 499 [234 P.2d 9].)

The judgment appealed from is affirmed. The purported appeal from the order denying motion for new trial is dismissed.

Adams, P. J., and Peek, J., concurred.