[Civ. No. 8037.   Third Dist.   Aug. 15, 1952.]

THE STOCKTON MORRIS PLAN COMPANY (a Corporation), Respondent, v. CALIFORNIA TRACTOR AND EQUIPMENT CORPORATION (a Corporation), Appellant.

Leon E. Warmke for Appellant.

Lafayette J. Smallpage and Harold J. Willis for Respondent.

THE COURT.—This is an appeal from a judgment in favor of plaintiff arising out of the assignment of a conditional sales contract by defendant to plaintiff. By its complaint plaintiff and respondent (referred to hereinafter as the finance company) alleged as follows: That on March 31, 1947, defendant and appellant (hereinafter referred to as the tractor company) transferred to the finance company a document, a copy of which is attached to the complaint; that this document was purportedly executed by the tractor company, as seller, and "Mariposa County District No. 5," as buyer, for the sum of $6,500.00, upon which there was $2,744.00 of the contract price unpaid; that the finance company paid to the tractor company $2,362.57 for an assignment of the rights of the tractor company in said document; that the document was not executed by the said "Mariposa County District No. 5" and that that district never agreed to pay any sum thereon to the tractor company; that the document was valueless as a claim by the tractor company or the finance company, its assignee, against "Mariposa County District No. 5" for the payment of any money.

The trial court made the following findings of fact: That at all times mentioned in the complaint one S. A. Milton was a supervisor of Mariposa County for District 5 thereof and serving as such; that on March 31, 1947, Milton, purporting to act for the district, arranged with the tractor company for the purchase of an Adams Motor Patrol; that a conditional sales contract with the district, incorporating the details of the proposed transaction, was executed thereafter in the office of the finance company on a form supplied by it; that the financing details incorporated in said contract followed negotiations between the finance company, the tractor company and Milton; that on March 31, 1947, the tractor company sold and assigned to the finance company, without recourse, for a consideration of $2,362.50, all its interest in the contract "purportedly executed by [the tractor company] as seller and Mariposa County District No. 5 as buyer"; that the contract was not what it purported to be for the

reason that the district never was a legal entity capable of making a valid contract, that Milton had no authority to bind the county of Mariposa through the execution of the contract because the board of supervisors of the county had never approved the contract nor authorized Milton to execute it; that the contract was valueless; that neither the finance company nor the tractor company had "actual" knowledge that the contract was invalid and unenforceable. As a conclusion of law the court declared that plaintiff was entitled to judgment as prayed. These findings are not attacked and could not be attacked as being unsupported by the record and the evidence.

█ Mariposa County District No. 5, while constituting an intracounty administrative agency, is not a legal entity capable of contracting. █ If the instrument be treated as in some manner a contract of the county, then it was void as not having been signed by the required number of supervisors (Sts. & Hy. Code § 909), and because it violated the provisions of section 18 of article XI of the state Constitution, which provide that "No county . . . shall incur any indebtedness or liability in any manner or for any purpose exceeding in any year the income and revenue provided for such year . . ." (This purported contract provided for installment payments extending considerably more than one year into the future.)

It appears from the transcript of the evidence taken by the court that Supervisor Milton wanted to obtain the motor patrol for use upon the roads in his district and proposed to turn in as part payment therefor certain road-working equipment already owned by the county, leaving a balance to be paid; that though the law specifically forbade such action to be taken by a single supervisor, under whatever guise he might purport to act, without following the procedure laid down for the acquisition of such road-working machinery and for the disposition of county property, he nevertheless began negotiating with the tractor company, proposing to accomplish his desires by simply purchasing the needed motor patrol through a conditional sales contract, receiving upon the price a credit for an agreed amount in consideration of turning over to the tractor company the road-working machinery he already was in charge of, and providing for the payment of the balance out of county revenues. The tractor company and Milton agreed upon the purchase price of the motor patrol and further agreed on the amount to be credited

by the trade-in of the other road-working machinery, thus fixing the unpaid part of the purchase price. The tractor company informed Milton that so far as it was concerned, however, it would not carry the paper and the deal would have to be a cash deal, that is, that he would have to procure other financing. He thereupon submitted the facts to a bank and was at first informed that the bank would agree to finance the deal but was later informed that the bank would not handle the transaction. He thereupon contacted the tractor company, asking if it could suggest other financing and was told that the finance company, respondent here, might be interested. Thereupon Milton, with a salesman for the tractor company, and an executive of the finance company, met at the finance company's offices and the proposed deal was discussed. Milton was introduced as the supervisor from District 5 in Mariposa County. The details of the proposed transaction, as it had been tentatively agreed upon between Milton and the tractor company, were stated and the finance company's representative inquired as to how the unpaid balance of the purchase price would be met. He was told by Milton that the first payment would have to be made not earlier than August of that year because it would have to be met from the county's share of gas tax moneys collected by the state and paid to the county, which funds would not be available until then; that, by reason of the way in which these funds were received, it would be necessary to spread out the installment payments for eight months so that funds would be available as the demands were made. These matters having been talked over and tentatively agreed upon, the finance company caused the the document hereinbefore referred to to be prepared. There was added to the unpaid purchase price the finance company's charges for carrying the paper, designated in the document as the time price differential, so that the unpaid contract price which would thus become payable out of the county tax moneys was fixed at $2,744, an addition to the purchase price of $381.50. Thereupon the document was executed, the salesman signing for the tractor company and Milton signing for the district. The salesman for the tractor company thereupon signed the seller's assignment to the finance company, and the finance company's check for the net amount of the unpaid purchase price was received by the salesman for the tractor company. Thus the matter was closed.

Appellant advances several contentions by reason of which it asks a reversal of the judgment appealed from. Principally,

it claims that the implied warranty of validity upon which the trial court primarily based its judgment did not arise under the circumstances here. We think that it is unnecessary to discuss these contentions because the further contention advanced by appellant here and also advanced by it in the trial court must be sustained. ▮ That contention is that under the circumstances of this case, as hereinbefore stated, the respondent, finance company, has directly participated for its own intended benefit in a transaction resulting in a purported agreement having for its purpose, if it be carried out, a violation of the specific statutory provisions governing the purchase by or for a county of such road-working equipment, the disposition, as a part of such purchase, of property already owned by the county and the unlawful diversion of county funds. Appellant, tractor company, contends, and we think correctly, that under such circumstances no relief to any of the parties to this transaction can be given by a court.

We may say with respect to the finance company and the tractor company, that full effect may be given to the finding of the trial court that the men involved in this transaction and representing those companies had no actual realization that the entire proposal of Supervisor Milton whereby he was attempting unlawfully to acquire and to dispose of property for and owned by the county of Mariposa was illegal and contrary to express provisions of pertinent statutes. But this cannot justify the courts of the state in placing their stamp of approval upon any part of the transactions involved here, for the benefit of either of the two companies involved, who actively participated therein for profit. ▮ ". . . [A] contract against public policy or against the mandate of a statute, may not be made the foundation of any action, either in law or in equity." (*Hooper* v. *Barranti*, 81 Cal.App.2d 570, 574 [184 P.2d 688].)

▮ "The illegality of an agreement may be in the consideration, in a promise, or in its performance. An agreement to do an illegal act is illegal. Usually the element that destroys the validity of an agreement is the purpose of the parties to accomplish or to aid an unlawful object. An agreement which discloses an intention to contravene a statute in fraud of the public or to the injury of private parties savors of a conspiracy and is vicious and unenforceable. If such an intention is once found to exist, the law cannot presume that the agreement is without the effect intended

by the parties in order to confer upon it the quality of enforceability.

". . . Moreover, agreements which, though legal when standing by themselves, are merely steps intended for the accomplishment of an illegal object will be declared illegal. If the effect of the agreement is to accomplish an unlawful purpose, however, the agreement will be declared illegal regardless of the intention of the parties. Indeed, the mere tendency of an agreement to promote unlawful acts may render it illegal as against the policy of the law." (12 Am.Jur., "Contracts," pp. 643-644.)

Our courts have by decisions too numerous to mention enforced the principle of law involved in the foregoing quotations. Suffice it to refer to a few. See *Levinson* v. *Boas,* 150 Cal. 185 [88 P. 825, 11 Ann.Cas. 661, 12 L.R.A.N.S. 575]. See, also, *Miller* v. *McKinnon,* 20 Cal.2d 83 [124 P.2d 34, 140 A.L.R. 570], in which last case a taxpayer was allowed to recover for the county of Santa Clara moneys paid to contractors engaged in the erection of a public building for the county upon the ground that the law concerning the letting of such contracts had not been followed. ▇ So farreaching is the principle here being discussed that it has been declared that such a contract cannot be ratified nor can any person be estopped from denying its validity. (*Fewel & Dawes, Inc.* v. *Pratt,* 17 Cal.2d 85, 91 [109 P.2d 650].) ▇ And our Supreme Court has declared that if a contract is illegal as a matter of law that court may refuse to enforce it, regardless of whether or not the matter has been advanced in the lower court. (*Fewel & Dawes, Inc. v. Pratt, supra,* p. 92, citing *Morey* v. *Paladini,* 187 Cal. 727 [203 P. 760].)

▇ In reply to this contention the respondent, finance company, urges that because it grounds its cause of action upon the assignment to it of the illegal contract and not upon the contract itself, the rule being discussed has no application. We do not agree. The respondent must be charged with knowledge of the laws being violated and of the unlawful purpose which Milton, through the guise of this purported contract with Mariposa County District No. 5 was seeking to accomplish. The entire plan was discussed directly with respondent according to the evidence and in particular it knew that Mariposa County tax funds were to be paid in to it in carrying out this unlawful plan. It participated therein solely for the purpose of profit which it expected to receive

through the payment to it of these same tax moneys. Its participation preceded the execution of the purported contract, and the document of which it took an assignment was written in its own offices upon its own forms. To be sure, it was not nominally a party to the purported contract, but it knew that the transaction would not occur unless it participated and took an assignment of the instrument which was necessary to the consummation of the unlawful transaction. Though it seeks to base its cause of action on the asserted implied warranty of validity breached by the actual invalidity, yet so close and intimate from the inception has been its association with all those concerned in this transaction and with all things done to further it that it must be here held to be *particeps criminis* therein. (See *Asher* v. *Johnson,* 26 Cal.App.2d 403, 411 [79 P.2d 457].) To grant relief in this case would be for the courts to lend themselves to the tearing down of the safeguards which the statutes have erected to protect public property and public funds.

The judgment is reversed.

Respondent's petition for a hearing by the Supreme Court was denied October 9, 1952.