[L. A. No. 25290. In Bank. June 2, 1959.]

CITY LINCOLN-MERCURY COMPANY (a Corporation),
Respondent, v. L. V. LINDSEY, Appellant.

Victor Bewley for Appellant.

Delbridge, Hamblin & Linton and Donald M. Hamblin for Respondent.

GIBSON, C. J.—This case involves the questions whether a contract for the conditional sale of a motor vehicle violated the requirements contained in subdivision (a) of section 2982 of the Civil Code and, if so, what was the effect of the violation.[1]

---

[1]Subdivision (a) of section 2982 of the Civil Code, as it read at the date of the contract, provided: ''Every conditional sale contract for the sale of a motor vehicle, with or without accessories, shall be in writing and shall contain all of the agreements between the buyer and the seller relating to the personal property described therein. It shall be signed by the buyer or his authorized representative and by the seller or its authorized representative, and when so executed an exact copy thereof shall be delivered by the seller to the buyer at the time of its execution. It shall recite the following separate items as such, in the following order: 1. The cash price of the personal property described in the conditional sale contract. 2. The amount of the buyer's down payment, and whether made in cash or represented by the net agreed value of described property traded in, or both, together with a statement of the respective amounts credited for cash and for such property. As soon as received by the dealer the dealer shall refund to the buyer or credit to the buyer on the next payment due the amount realized on any insurance policy, or rights thereunder, assigned to the seller by the buyer in connection with the con-

On October 22, 1954, L. V. Lindsey bought from City Lincoln-Mercury Company, herein called the seller, a new Lincoln automobile. He immediately took delivery of the car and left with the seller a 1948 Packard sedan which he traded in as the sole down payment. At the time of this transaction Lindsey and a salesman of the seller signed a sales order, and Lindsey also signed a blank form of conditional sale contract. The sales order specified a price of $6,047.38 for the automobile, including accessories, sales tax, and license fee, a trade-in of $1,815, an unpaid balance of $4,232.38, and a provision that the "time sale price balance," the amount of which was not filled in, was to be paid in 30 monthly installments of $166.75. The sales order recited $100 as the cash value of the Packard.

The "time price differential" and the "contract balance," which are required to be stated in a conditional sale contract by subdivision (a) of section 2982, were not filled in on the sales order at the time it was signed.[2] The order contained a provision authorizing the seller to fill in all blanks on the conditional sale contract in conformity with the order. Lindsey was furnished with a copy of the sales order, and, after the conditional sale contract was signed by the seller's president about October 26, 1954, Lindsey was sent a complete and executed copy containing all the data required by the statute.

On October 26, 1954, the seller assigned the conditional sale contract to the Bank of America, and thereafter Lindsey and the bank executed a "Revision Agreement" which provided for an extension of the time of the payments and added that,

ditional sale. Failure of the dealer to comply with the foregoing provision shall in no way affect the validity or enforceability of the conditional sale contract. 3. The amount unpaid on the cash price, which is the difference between Items 1 and 2. 4. The cost to the buyer of any insurance, the premium for which is included in the contract balance. 5. A description and itemization of amounts, if any, which will actually be paid by the seller or his assignee to any public officer as fees in connection with the transaction, which are included in the contract balance. 6. The amount of the unpaid balance, which is the sum of Items 3, 4, and 5. 7. The amount of the time price differential. 8. The contract balance owed by the buyer to the seller, which is the sum of Items 6 and 7. 9. The number of installments required to pay the contract balance, the amount of each installment, and the date for payment of the installments."

[2]The "time price differential," as defined by subdivision (h) of section 2981, refers to the increase in cost of the automobile to the buyer resulting from the fact that payment is to be made by installments under a conditional sale contract.

"Contract balance," as defined by subdivision (i) of section 2981, refers to the amount which the buyer agrees to pay in installments.

except for this modification, the original agreement should remain in full force and effect. Lindsey paid two installments of $166.75 each and $100 as part payment of the third installment, and on March 10, 1955, he returned the Lincoln automobile to the seller. In April the bank reassigned the conditional sale contract to the seller, and the seller resold the Lincoln car second-hand for $3,238 after having made some repairs to it.

The seller sued Lindsey for the deficiency. Lindsey answered and filed a cross-complaint based on the theory that the contract was void because of violations of section 2982 of the Civil Code, that therefore the seller could not enforce it, and that Lindsey was entitled to recover the entire consideration he had paid, including $2,000 as the reasonable value of the Packard, and also exemplary damages. In the answer to the cross-complaint, the seller denied that the contract was void and alleged that Lindsey had waived and was estopped to allege any defect in the contract.

The trial court determined that the contract was void at the outset because, when signed by Lindsey, it did not contain the information required by subdivision (a) of section 2982 but that Lindsey's execution of the revision agreement, after he received a copy of the contract with all the required information, was equivalent to a re-execution of that contract in a complete form and that Lindsey was thereby estopped from claiming that the contract was unenforceable. The court further concluded that, even if the contract had remained unenforceable, Lindsey could not have recovered anything on his cross-complaint. This was based upon the court's conclusions that Lindsey could recover no more than the installments which he had paid, totaling $433.50, together with the actual retail market value of the Packard, found to be $195, and that the seller was entitled to offset against these sums the depreciation in value of the Lincoln caused by Lindsey's use of the car, which the court found exceeded the amount due Lindsey. Judgment was for the seller as to both the deficiency action and the cross-complaint, and Lindsey has appealed.

 The agreement as made on October 22, 1954, was illegal and unenforceable by the seller. This is true even if the sales order is considered part of the conditional sale contract, because at the time Lindsey signed the documents neither the sales order nor the blank form of conditional sale contract contained a statement of the time price differential or the contract balance. The provision of section 2982, sub-

division (a), requiring recital of all the items there enumerated is for the protection of the purchaser; a violation of the subdivision in this respect makes the contract unenforceable by the seller, and the buyer may recover payments made to the seller because, as a member of the class for whose protection the statute was enacted, the buyer is not *in pari delicto*. (*Estrada* v. *Alvarez*, 38 Cal.2d 386, 389 [240 P.2d 278] ; *Carter* v. *Seaboard Finance Co.*, 33 Cal.2d 564, 573-574 [203 P.2d 758].)

We cannot properly hold that there was compliance with the requirements of subdivision (a) of section 2982 on the theory that the conditional sale contract was executed only when it was signed by the president of the seller, at which time it contained all required data, with a copy thereafter delivered by mail to Lindsey. Such a conclusion would require a construction of the subdivision which would wholly frustrate its purpose. Obviously the provision requiring the express statement of the time price differential and the contract balance was enacted to ensure that the buyer, when he enters into the contract, is aware of the additional expense the payment in installments will cause him and the total extent of the indebtedness to which he will become subjected. If, as in the present case, this information is omitted at the time the buyer signs the contract and is provided only in a copy after the seller has filled in and executed the contract, the intended warning will be of no avail to the buyer, who will already be bound when he receives the copy. Subdivision (a) of section 2982 must be construed as requiring that the enumerated items be stated in the contract at the time the buyer signs it.

The fact that Lindsey, when signing the contract, could ascertain the amounts of the missing items by calculation based on the figures appearing in the sales order does not show substantial compliance with subdivision (a). The intended warning will not be effective if the buyer cannot see at first glance the data which the statute requires to be called to his attention. (*Adams* v. *Caruso Enterprises Inc.*, 134 Cal. App.2d 403, 408-409 [285 P.2d 1022].)

The "Revision Agreement" executed by Lindsey and the bank was not a re-execution or complete substitution of the original contract so as to render the illegality immaterial, because the revision was only a minor amendment relating solely to the date on which payments should be made and obviously was not intended as a new conditional sale agree-

ment. ▇ Moreover, no waiver or estoppel can be based on the revision agreement. A party to an illegal contract cannot ratify it, cannot be estopped from relying on the illegality, and cannot waive his right to urge that defense. (*Wells* v. *Comstock*, 46 Cal.2d 528, 532 [297 P.2d 961] ; *Fewel & Dawes, Inc.* v. *Pratt*, 17 Cal.2d 85, 91 [109 P.2d 650] ; *Mary Pickford Co.* v. *Bayly Bros., Inc.*, 12 Cal.2d 501, 524 [86 P.2d 102] ; *First Nat. Bank* v. *Thompson*, 212 Cal. 388, 405 [298 P. 808] ; *Pollak* v. *Staunton*, 210 Cal. 656, 663 [293 P. 26] ; *Industrial Indem. Co.* v. *Golden State Co.*, 117 Cal.App.2d 519, 540 [256 P.2d 677] ; *Stockton Morris etc. Co.* v. *California etc. Corp.*, 112 Cal.App.2d 684, 690 [247 P.2d 90] ; see *Black* v. *Cutter Laboratories*, 43 Cal.2d 788, 806 [278 P.2d 905] ; *American Nat. Bank* v. *A. G. Sommerville, Inc.*, 191 Cal. 364, 371 [216 P. 376].) This rule has been applied in cases where the person asserted to have waived the illegality was not *in pari delicto* and was one of those for whose protection the statute involved was enacted. (*Mary Pickford Co.* v. *Bayly Bros., Inc.*, 12 Cal.2d 501, 524 [86 P.2d 102] ; *First Nat. Bank* v. *Thompson*, 212 Cal. 388, 405-406 [298 P. 808] ; *Pollak* v. *Staunton*, 210 Cal. 656, 663 [293 P. 26] ; *Industrial Indem. Co.* v. *Golden State Co.*, 117 Cal.App.2d 519, 540 [256 P.2d 677].) Even if we were to assume that there are exceptions to the rule, as might be suggested by language used in the Wells case, 46 Cal.2d at page 532, we find nothing in the record which would justify the making of an exception here.

▇ It thus appears that the seller may not enforce the conditional sale contract, and the judgment must be reversed insofar as it allows the seller to recover the amount of the deficiency.

The next question is whether Lindsey is entitled to anything under his cross-complaint. ▇ As we have seen, the buyer under an agreement which is illegal because of a failure to comply with subdivision (a) of section 2982 may recover the consideration that he has given. The trial court found that any recovery by Lindsey must be limited to the amount of the cash payments which he made, totaling $433.50, plus the retail market value of the Packard, fixed by the court at $195, less an offset in the amount of the depreciation resulting from Lindsey's use of the Lincoln.

▇ There is no dispute as to the amount of the cash payments, but Lindsey contends that his recovery for the loss of the Packard should not be limited to its actual cash value and that he is entitled to the trade-in value, which he testified

was $2,000, or at least to $1,815, the amount which the contract allowed in trade for the Packard. The trade-in value, however, is not a correct measure of the detriment suffered by the loss of a used automobile because such a value does not depend solely on the qualities of the automobile and its attractiveness in the market but is also affected by the variable factor of the dealer's interest in making the sale of the new car to which the trade-in is applied. The trial court was not required to consider the fact that the contract accepted the Packard as a trade-in in the amount of $1,815, since there was substantial evidence that at the time Lindsey signed the sales order it contained an evaluation of the Packard at $100 as the wholesale used car price and that Lindsey knew that the amount entered as the trade-in was fictitious. The actual retail value of the automobile was correctly held to be the test, and the amount of $195 is supported by the evidence.

 The court determined that Lindsey was not entitled to punitive damages, and its determination must be sustained because it found, on the basis of substantial evidence, against Lindsey's allegations that the seller acted maliciously and fraudulently in violating the statute.

It follows from the foregoing that, apart from the seller's right to an offset, if any, Lindsey's recovery would amount to $628.50, representing his cash payments of $433.50 and the value of the Packard, fixed at $195. Whether the seller may have an offset depends upon whether such relief is permitted by section 2982 and whether, if so, an offset is justified under the circumstances presented here.

 Although section 2982 does not contain any express provision governing offsets, the intention of the Legislature with respect to this problem can be ascertained from subdivision (e), which provides for recovery of "the total amount paid on the contract balance" from a seller who has violated the provisions of subdivisions (c) or (d).[3] We held in *Lewis* v.

---

[3]Subdivision (e) of section 2982 of the Civil Code provides: "If the seller, except as the result of an accidental or bona fide error in computation, shall violate any provision of subdivisions (c), or (d) of this section the conditional sale contract shall not be enforceable, except by a bona fide purchaser for value, and the buyer may recover from the seller in a civil action the total amount paid on the contract balance by the buyer to the seller or his assignee pursuant to the terms of such contract."

Subdivision (c) provides: "The amount of the time price differential in any conditional sale contract for the sale of a motor vehicle, with or without accessories, shall not exceed 1 per cent of the unpaid balance multiplied by the number of months, including any excess fraction thereof as one month, elapsing between the date of such contract and the due

*Muntz Car Co.,* 50 Cal.2d 681, 686 [328 P.2d 968], which involved a violation of subdivision (c), that the quoted words provided a penalty for the violation and precluded the right to an offset. The facts that the applicability of subdivision (e) is limited to situations where subdivisions (c) and (d) have been violated and that no provision whatever is made governing the effect of violations of other subdivisions indicate that with respect to the latter subdivisions the Legislature did not wish to impose the penalty which precludes the granting of an offset. ▇▇ The courts will not impose penalties for noncompliance with statutory provisions in addition to those that are provided expressly or by necessary implication. (*Grant* v. *Weatherholt,* 123 Cal.App.2d 34, 43 [266 P.2d 185]; *Comet Theatre Enterprises* v. *Cartwright* (Ninth Cir.), 195 F. 2d 80, 81.) ▇▇ Section 2982 thus recognizes in effect the possibility of an offset where there have been violations of subdivisions other than (c) or (d). Such a situation is presented here because the seller, who violated subdivision (a), is not claimed to have violated subdivisions (c) or (d) and it does not appear that there was any infraction of the latter subdivisions.

▇▇ It is true that as a general rule the guilty party to an illegal contract cannot bring an action to enforce the contract or to recover on principles of quasi contract the benefits he has conferred under the contract. (*Tiedje* v. *Aluminum Taper Milling Co.,* 46 Cal.2d 450, 453 [296 P.2d 554]; *Fong* v. *Miller,*

---

date of the last installment, or twenty-five dollars ($25), whichever is greater; provided, that such contract may provide for interest on any delinquent installment from and after the date of delinquency, and for reasonable collection costs and fees in the event of delinquency.''

Subdivision (d) provides: ''Any provision of any conditional sale contract for the sale of a motor vehicle to the contrary notwithstanding, the buyer may satisfy in full the indebtedness evidenced by such contract at any time before the final maturity thereof, and in so satisfying such indebtedness shall receive a refund credit thereon for such anticipation of payments. The amount of such refund shall represent at least as great a proportion of the time price differential, after first deducting from such time price differential a minimum charge of not to exceed twenty-five dollars ($25), as the sum of the periodic time balances after the month in which such contract is paid in full bears to the sum of all of the periodic time balances under the schedule of payments in the contract, both sums to be determined according to the monthly balances which would result if the indebtedness were paid according to the terms of the contract; provided, however, that the provisions of this subsection shall not impair the right of the seller or his assignee to receive a minimum time price differential of twenty-five dollars ($25), or to receive interest on delinquent installments or reasonable collection costs and fees, as provided in subsection (c) of this section; and provided further, that where the amount of such refund credit would be less than one dollar ($1), no refund need be made.''

105 Cal.App.2d 411, 413 [233 P.2d 606]; *Owens* v. *Haslett,* 98 Cal.App.2d 829, 833 [221 P.2d 252]; Rest., Contracts, § 598, and Comment c on that section.) However, it does not follow that, when the buyer invokes the aid of the court to obtain return of what he has paid under the contract, the court cannot, to reach a more just result, charge him with any detriment caused to the seller as a result of the buyer's use or treatment of the car. ▓▓ Since section 2982 recognizes the possibility of an offset where only subdivision (a) is violated, we conclude that a seller who has suffered such a detriment should be allowed an offset. The same conclusion has been reached, without discussion of the statutory language, in a number of cases. (*Williams* v. *Caruso Enterprises,* 140 Cal. App.2d Supp. 973, 976 et seq. [295 P.2d 592]; *Baum* v. *Aleman,* 139 Cal.App.2d Supp. 929, 933 [293 P.2d 162]; see *United States Credit Bureau, Inc.* v. *Sanders,* 103 Cal.App. 2d 806, 816 [230 P.2d 849]; cf. *Adams* v. *Caruso Enterprises Inc.,* 134 Cal.App.2d 403, 409 [285 P.2d 1022].)

▓▓ A detriment to the seller entitling it to an offset was shown by evidence that Lindsey made an extensive use of the Lincoln and that, when he returned the car, it had greatly depreciated in value. Lindsey has not attacked the finding made with respect to the amount of the offset, namely, that the offset would exceed the sum which Lindsey could recover from the seller if he were entitled to recover the consideration he had given. Under these circumstances there is no occasion for us to determine the proper method of calculating the offset. Since the offset is larger than the sum due Lindsey, it is clear that he can recover nothing on his cross-complaint.

Insofar as the seller's action for a deficiency is concerned, the judgment is reversed with directions to enter judgment for Lindsey, and, insofar as Lindsey's cross-complaint is concerned, the judgment is affirmed.

Shenk, J., Traynor, J., Schauer, J., Spence, J., McComb, J., and Peters, J., concurred.