Filed 11/15/21

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE


| | |
|---|---|
| LANA SIEU NGU, | B302296 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC585417) |
| v. | |
| CITY BAIL BONDS, et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, David S. Cunningham, III, Judge; and Marc R. Marmaro, Judge. Affirmed.

Keiter Appellate Law and Mitchell Keiter for Defendants and Appellants.

Influential Law and Van Nghiem for Plaintiff and Respondent.

_____

Plaintiff Lana Sieu Ngu sued bail agents Mylinh Kha and Ethan Kha, doing business as City Bail Bonds, for restitution under California's unfair competition law (UCL) (Bus. & Prof. Code, §§ 17200, et seq.) based on defendants' unlawful solicitation of bail.[1]  After a bench trial, the trial court ruled in plaintiff's favor, awarding her $38,666 in restitution.  On appeal, defendants argue the trial court erred in finding defendants unlawfully solicited bail from plaintiff in violation of California Code of Regulations, title 10, section 2079. Section 2079 prohibits bail agents from soliciting bail from individuals other than the arrestee, her immediate family, her attorney, or a person designated in writing.[2]  Defendants also argue the trial court erred in finding their conduct caused plaintiff economic injury. We affirm.

---

[1]  Because defendants have the same last name, we refer to them by their first names for the sake of clarity.  No disrespect is intended.

[2]  California Code of Regulations, title 10, section 2079 provides in full, "No bail licensee shall solicit bail except in accordance with Section 2079.1 and from:  (a) An arrestee; (b) The arrestee's attorney; (c) An adult member of the arrestee's immediate family; or (d) Such other person as the arrestee shall specifically designate in writing.  Such designation shall be signed by the arrestee before the solicitation, unless prohibited by the rules, regulations or ordinances governing the place of imprisonment.  If so prohibited, it may be signed after release of the arrested to ratify a previous oral designation made by the arrestee."  The parties do not discuss the last sentence of the regulation, nor do we.

## *FACTUAL AND PROCEDURAL BACKGROUND*

In April 2014, plaintiff hired Thuc Ngoc Pham as a temporary employee at plaintiff's store in downtown Los Angeles. Two months later, the police arrested plaintiff for selling fireworks and Pham for possession of fireworks. Plaintiff called defendants for assistance with posting her bail. Two days later, plaintiff posted bail through appellant City Bail Bonds and was released from custody.

On the day of plaintiff's release, defendant Mylinh telephoned plaintiff and suggested that plaintiff post the bail of plaintiff's employee, Pham, to incentivize Pham not to testify against plaintiff. In the civil trial plaintiff stated that Mylinh advised her that if plaintiff "did not secure a bond for Ms. Pham, [] there was a danger that Ms. Pham might testify against" plaintiff. Plaintiff refused.

The following day, Mylinh called plaintiff again and repeated her advice to post Pham's bail. After plaintiff refused for the second time, Mylinh said she would call Robert Hsu, plaintiff's former attorney, to "ask his opinion about [whether plaintiff] should bail [Pham] out or not."

Mylinh called plaintiff the next day and said she had arranged an appointment for plaintiff to meet with Hsu. Plaintiff agreed to the meeting. When she arrived at Hsu's office, Mylinh and Ethan Kha were already present. Plaintiff testified Hsu "insist[ed]" that plaintiff should bail out Pham to prevent Pham from testifying against her. Hsu and defendants warned plaintiff that she faced eight to ten years in prison if she were found guilty. As Hsu would later testify, he told plaintiff during the meeting that Pham was "going to talk whether she's inside or out, but if you bail her out, as she's been requesting, at the very

3

least . . . she'll be somewhat grateful for that. And that the police will not have easy access to her while in jail."

Plaintiff told defendants she did not have the money to post Pham's bail which had been set at $500,000. Plaintiff testified Mylinh told her that, to bail out Pham, plaintiff would have to pay an 8 percent fee, in other words $40,000. In plaintiff's words: "I got scared, you know, but I don't have money." After plaintiff expressed hesitation, Mylinh suggested plaintiff pay only $20,000 up front. Plaintiff relented, responding " 'I will try to borrow some money.' " Plaintiff signed a bail bond agreement the following day. Plaintiff would eventually pay defendants a total of $38,666 for Pham's bail.

Pham would later plead no contest to possession of "unaltered dangerous fireworks" (Health and Saf. Code, § 12700, subd. (b)(3)) and was sentenced to three years' probation and 14 days in jail. Plaintiff pled no contest to possession of a "destructive device" (Pen. Code, § 18710, subd. (a)) and was sentenced to five years' probation and eight days in jail.

In November 2015, plaintiff sued defendants for restitution of the amounts she paid to bail out Pham. The operative complaint alleged, among other claims, a violation of the UCL. At the close of trial, she amended her UCL claim to allege that the underlying violation of law was California Code of Regulations, title 10, section 2079.[3]

The court held a bench trial in August 2018, and found defendants had violated section 2079 by soliciting payment of Pham's bail from plaintiff. The court entered judgment for

---

[3] All future undesignated section references are to the California Code of Regulations.

plaintiff on her UCL claim, awarding $38,666 in restitution, plus costs and attorney's fees.

Defendants timely appealed.

## *DISCUSSION*

### *1.    Relevant Bail Bond Regulations*

This appeal involves the interpretation of three provisions of the California Code of Regulations, title 10 – sections 2079, 2079.1 and 2080.  In relevant part, section 2079 prohibits bail agents from soliciting bail "except . . . from:  (a) An arrestee; (b) The arrestee's attorney; (c) An adult member of the arrestee's immediate family; or (d) Such other person as the arrestee shall specifically designate in writing . . . ."

Section 2079.1 provides, "Any solicitation of an arrestee himself pursuant to Section 2079 (a) shall be only after a bona fide request for bail services has been received from the arrestee or from a person specified in Section 2079 (b) or (c)."

Section 2080 provides that, "No bail licensee shall negotiate concerning bail, except with (A) A person specified in Section 2079; (B) Any other person who without previous solicitation on the part of the bail licensee has requested the bail licensee's services."

Defendants' contentions require us to interpret these regulations, a question of law that we review de novo.  (See *Young v. Fish and Game Com.* (2018) 24 Cal.App.5th 1178 [interpreting California Code of Regulations de novo]; *Combs v. Skyriver Communications, Inc.* (2008) 159 Cal.App.4th 1242, 1253 ["We review the trial court's interpretation of statutes and regulations de novo."].)

Rules of "statutory construction govern our interpretation of regulations promulgated by administrative agencies."  (*Hoitt v.*

5

*Department of Rehabilitation* (2012) 207 Cal.App.4th 513, 523.) Accordingly, we consult and apply traditional statutory interpretation principles. " 'To determine the Legislature's intent in interpreting these statutory provisions, "[w]e first examine the statutory language, giving it a plain and commonsense meaning." [Citation.] We do not consider statutory language in isolation; instead, we examine the entire statute to construe the words in context. [Citation.] If the language is unambiguous, "then the Legislature is presumed to have meant what it said, and the plain meaning of the language governs." [Citation.]' " (*Crayton v. FCA US LLC* (2021) 63 Cal.App.5th 194, 203.)

**2.** **_The Trial Court Correctly Interpreted Section 2079_**

Defendants argue the trial court erred in interpreting section 2079 to prohibit their solicitation of plaintiff to post Pham's bail. According to defendants, when read in conjunction with section 2080, section 2079 permits a bail agent to negotiate a third party's bail with an arrestee who has previously requested that bail agent's services. The argument continues that, because plaintiff concededly had requested defendants' services for herself, then defendants were lawfully permitted to negotiate with plaintiff about Pham's bail. The problem with this argument is that it is not what the regulations provide.

Defendants hang their construction hat on that part of section 2080 permitting bail agents to "negotiate" bail with a person "who without previous solicitation on the part of the bail licensee has requested his services." Defendants assert that this provision "expand[s] an arrestee's *requested contact* with a bail agent to encompass discussion of a co-arrestee's bail (for the benefit of the arrestee)." A facial review of section 2080 dooms this argument. First of all, we observe that section 2080 deals

6

with negotiation, section 2079 with solicitation.  Even if we were to treat negotiation and solicitation as substantially synonymous, the balance of section 2080 is of no assistance to defendants.[4]

Under defendants' interpretation, a bail agent may circumvent the solicitation prohibitions in section 2079 whenever there is a co-arrestee.  Once an arrestee (plaintiff) initiates contact with a bail agent, that agent is then free to negotiate with the arrestee, not only about that arrestee's bail, but also bail for any co-arrestee (Pham).  Because "co-arrestee" is not mentioned in section 2080, defendants' argument essentially is that once a bail agent has lawful contact with an arrestee, he or she may solicit for the payment of anyone else's bail.  We find nothing in the language of the statute that supports defendants' interpretation.  The facts of this case show the skullduggery defendants' interpretation would authorize.

Under the plain language of section 2079, a bail bond agent may solicit bail only from an arrestee, her immediate family, her attorney, or any other person designated in writing.  To the extent defendants ask us to interpret the provision as authorizing a bail bond agent to solicit bail from the arrestee *on behalf of* a third party such as a co-arrestee, section 2079.1 negates that interpretation.  Under section 2079.1, the bail bond agent must

---

[4]    "Negotiation," in general, is "a consensual bargaining process in which the parties attempt to reach agreement on a disputed or potentially disputed matter."  (NEGOTIATION, Black's Law Dictionary (11th ed. 2019).)  "Solicitation," by contrast, is "the act or an instance of requesting or seeking to obtain something."  (*Id.*, SOLICTATION.)  These definitions suggest the term "negotiation" involves a bargaining process that has already begun, and "solicitation" addresses the circumstance when a new effort is initiated.

first receive "a bona fide request for bail services" from the arrestee or the arrestee's family member or attorney before soliciting bail from the arrestee. The record is devoid of any evidence that suggests Pham, her family or attorney asked defendants to contact plaintiff to arrange for bail. The evidence is to the contrary. And we see nothing in the statute that supports defendants' position that once plaintiff asked defendants to arrange her own bail, the agent was given free statutory rein to solicit plaintiff and ask her to post Pham's bail.

We conclude that defendant's conduct runs afoul of both the language of the regulations and their purpose. As our colleagues in Division Six of this court explained in *People v. Dolezal* (2013) 221 Cal.App.4th 167, 174 (*Dolezal*), the regulations are intended to "protect recent arrestees against harassment, intimidation, overreaching, annoyance or invasions of privacy by bail agents clamoring for their business."[5] The record here shows that is

---

[5] *Dolezal* held that the section 2079.1 did not violate the First Amendment to the United States Constitution. (*Dolezal, supra,* pp. 168-169.) Defendants discuss *Dolezal* in some detail but do not claim that section 2079.1 is unconstitutional.

Defendants argue that *Dolezal* is helpful to their position because the court expanded the list of individuals a bail agent may solicit to include "friends." The Court of Appeal did use the word "friends" on occasion in reference to section 2079.1. (*Dolezal, supra*, 221 Cal.App.4th at p. 176.) But "friends" is not mentioned in the statute. At best, the court's reference might have been to section 2079 which allows solicitation of "(d) Such other person as the arrestee shall specifically designate in writing." There is nothing in the record that Pham in writing designated plaintiff as a person who could be contacted about bail. Equally to the point, defendants acknowledged plaintiff did not consider Pham a friend. She was an employee.

exactly what defendants did – their high powered tactics eventually overcame plaintiff's will. This conduct included the suggestion that Pham would likely offer favorable testimony in plaintiff's criminal trial, thus raising significant criminal violations of its own. (See Pen. Code, § 127 [suborning perjury]; § 136.1 [dissuading a witness]; § 137, subd. (c) [influencing testimony by bribe and other means].)

### 3.     *Restitution Under the UCL*

Defendants contend the court erred in holding them liable for restitution under the UCL because plaintiff did not establish causation or suffer economic injury.[6]

In a private action under the unfair competition law, the only monetary remedy available is restitution. (*Clark v. Superior Court* (2010) 50 Cal.4th 605, 613; see Bus. & Prof. Code, § 17203.) To obtain such relief, a plaintiff must establish she suffered economic injury "as a result of" the unfair business practice. (*Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 323, 326.) We review a factfinder's implied finding of causation for substantial evidence. (See *Milton v. Perceptual Dev. Corp.* (1997) 53 Cal.App.4th 861, 867 ["A trial court's finding on the causation issue will be affirmed so long as it is supported by substantial evidence."].)

Defendants acknowledge plaintiff did not consider bailing out Pham before Mylinh advised her to do so. Defendants argue

---

[6]     Defendants also fault the trial court for failing to make an express finding of causation and economic injury, but do not cite to any requirement that a trial court must make express findings on these elements when ordering restitution under the unfair competition law.

9

that "even without Mylinh's warning, plaintiff would have received this information" from Hsu. By "this information" defendants refer to "Mylinh's admonition" about "the possibility of Pham's adverse testimony" should plaintiff not post bail on Pham's behalf. While arguing that Hsu's advice established independent causation, defendants also admit that Mylinh arranged plaintiff's meeting with Hsu. In short, the record established that plaintiff bailed out Pham in response to Mylinh's illegal solicitation of Pham's bail from her. That Mylinh's solicitation was generally confirmed by Hsu did not create an independent, superseding cause, attenuating Mylinh's solicitation. Substantial evidence supported the finding that defendants' violation of section 2079 resulted in plaintiff paying defendants for Pham's bail.

Defendants argue that plaintiff did not establish economic injury because in exchange for paying Pham's bail, she "received Pham's freedom (and silence) in exchange." A quid pro quo: plaintiff got something that could have been of real value in return for the unlawful solicitation, so restitution is unwarranted. At oral argument, defendants' counsel attempted to walk back the argument that the benefit to plaintiff was an actual promise that Pham would withhold evidence from the police. According to counsel, "It's not as if my client said, here, Pham, here's $10,000, keep quiet and lie to the police . . . . They said to respondent if you don't bail her out, there's probably a greater possibility that she will inculpate you in the crime," as if the latter were perfectly acceptable.

Counsel attempted to analogize what happened here to an insurance policy which the insured never had the opportunity to

use.[7] In support of this angle, defendants cite to *Medina v. Safe-Guard Products, Internat., Inc.* (2008) 164 Cal.App.4th 105 (*Medina*), where the Court of Appeal found that a plaintiff who purchased an insurance policy from an unlicensed insurer had not lost money as a result of the unfair competition because he received an enforceable policy. (*Id.* at p. 112; see also *Peterson v. Cellco Partnership* (2008) 164 Cal.App.4th 1583, 1591 [no economic injury where plaintiffs received the benefit of their bargain].) Unlike *Medina*, where the plaintiff sought out the insurer, and never claimed he did not want the insurance policy "in the first place" (*Medina*, p. 114), here, plaintiff resisted Mylinh's entreaties until her will was overcome by Mylinh and Hsu.

There is no serious doubt that plaintiff suffered economic loss when she paid for Pham's bail, and we refuse to attribute any value to intangible benefits defendants claim she "received" in return. We do not accept defendants' offer to "hold [plaintiff] to her bargain" of "receiving Pham's freedom (and silence) in exchange" for paying for Pham's bail. Stated more sharply, we refuse to enforce a contract, the purpose of which was at a minimum to violate California law and may have been to suborn perjury. A contract must have a lawful purpose (Civ. Code, § 1550), and this does not. (See *Stockton Morris Plan Co. v. California Tractor & Equipment Corp.* (1952) 112 Cal.App.2d 684, 690 [" 'agreements which, though legal when standing by themselves, are merely steps intended for the accomplishment of

---

[7] Counsel's "insurance" remark was one of several statements he made at oral argument that suggested paying someone's bail in exchange for favorable testimony was generally acceptable.

an illegal object will be declared illegal. . . .  Indeed, the mere tendency of an agreement to promote unlawful acts may render it illegal as against the policy of the law.' "]; *Fewel & Dawes, Inc. v. Pratt* (1941) 17 Cal.2d 85, 92].)

### DISPOSITION

The judgment is affirmed.  Respondent is awarded costs on appeal.

RUBIN, P. J.

WE CONCUR:

BAKER, J

MOOR, J.