[No. G038816. Fourth Dist., Div. Three. June 19, 2008.]

PEDRO MEDINA, Plaintiff and Appellant, v.
SAFE-GUARD PRODUCTS, INTERNATIONAL, INC., et al., Defendants
and Respondents.

## COUNSEL

Catanzarite Law Corporation, Kenneth J. Catanzarite and Jim Travis Tice for Plaintiff and Appellant.

Barger & Wolen, Steven H. Weinstein, Spencer Y. Kook and Peter Sindhuphak for Defendants and Respondents.

## Opinion

**SILLS, P. J.**—Pedro Medina brought this unfair competition law or UCL (Bus. & Prof. Code, § 17200 et seq.) action based on the fact he had purchased a vehicle service contract, which is allegedly an insurance contract,[1] from a company not licensed to sell insurance in California. (See Ins. Code, § 700 [requiring licenses of insurers].) On a demurrer to the second amended complaint, the trial court reasoned that Medina did not meet the requirement set forth in Business and Professions Code section 17204, as amended by Proposition 64, that a UCL plaintiff have suffered "injury in fact and has lost money or property as a result" of the unfair competition.[2]

The irony is that Medina's class action is predicated on the idea that he bought an absolutely void contract and cannot enforce it (hence he is out the money he paid for the contract, having received nothing for it).[3] That raises the problem of just exactly what are the consequences to a consumer who buys an insurance contract from an unlicensed, out-of-state insurer. Is the consumer really without insurance? We are unaware of any California authority addressing the question, hence we publish our answer to it in this opinion. As readers might readily intuit, California law most certainly does not leave consumers in the lurch when they inadvertently purchase an insurance policy from an unlicensed insurer.

I

Other kinds of contracts might be different, of course, and in appropriate cases an "illegal" contract might not be enforceable *at all*, by either party.

---

[1] Because this case comes to us from a judgment after the sustaining of a demurrer, the parties have not had the occasion to address the merits of whether a vehicle service contract really is an "insurance contract" under the Insurance Code. For purposes of this opinion, we will proceed on the assumption that the vehicle service contract at issue here is an insurance contract, but this opinion should not be read as addressing the merits of the issue, one way or the other.

[2] Technically, the last sentence of Business and Professions Code section 17203 sets up a standing requirement, namely that a claimant must meet the standing requirements of Business and Professions Code section 17204, and the last sentence of Business and Professions Code section 17204 has the "injury in fact and has lost money or property as a result of the unfair competition" language.

[3] To quote from his second amended class action complaint: "The *sole* issues are whether the California Insurance Code required Safe-Guard, the dealer defendants and the agent defendants to be licensed by the California Insurance Commissioner to lawfully sell Safe-Guard F&I contracts in California; whether such contracts first had to be approved by the California Commissioner of Insurance; whether said defendants were in fact licensed by the Insurance Commissioner; and whether the Insurance Commissioner had approved the F&I contracts for sale in California." (Italics added, original italics omitted, and some capitalization omitted.)

(E.g., *Berka v. Woodward* (1899) 125 Cal. 119 [57 P. 777] [self-dealing by city council member who sold lumber and materials to city].)

■ But when it comes to *insurance* contracts, there can be no doubt that the text of the licensing statute, and the policy behind that statute, require that a consumer who innocently purchased a policy from a company unlicensed in California may still enforce that insurance contract. (*Lewis & Queen v. N. M. Ball Sons* (1957) 48 Cal.2d 141, 151 [308 P.2d 713] [whether illegal contract is void or voidable depends on "how the aims of policy can best be achieved"].)

A

■ We begin with the text of the licensing statute itself. Insurance Code section 700 requires every person transacting any class of insurance business in California to have a license from the state Insurance Commissioner.[4] (See also Croskey, et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2007) ¶ 1:125, p. 1-30 (rev. # 1, 2007) ["Insurance companies are required to obtain licenses and certificates from the Department of Insurance in order to transact insurance business in California."].)

---

[4] Insurance Code section 700 provides:

"(a) A person shall not transact any class of insurance business in this state without first being admitted for that class. Except for the State Compensation Insurance Fund as authorized by Sections 11770 and 11778 to 11780.5, inclusive, admission is secured by procuring a certificate of authority from the commissioner. The certificate shall not be granted until the applicant conforms to the requirements of this code and of the laws of this state prerequisite to its issue.

"(b) The unlawful transaction of insurance business in this state in willful violation of the requirement for a certificate of authority is a public offense punishable by imprisonment in the state prison, or in a county jail not exceeding one year, or by fine not exceeding one hundred thousand dollars ($100,000), or by both that fine and imprisonment, and shall be enjoined by a court of competent jurisdiction on petition of the commissioner.

"(c) After the issuance of a certificate of authority, the holder shall continue to comply with the requirements as to its business set forth in this code and in the other laws of this state, including, but not limited to, Chapter 5 (commencing with Section 1631), with regard to employees or contractors who solicit, negotiate, or effect insurance.

"(d) Where a hearing is held under this section the proceedings shall be conducted in accordance with Chapter 5 (commencing with Section 11500) of Part 1 of Division 3 of Title 2 of the Government Code, and the commissioner shall have all the powers granted therein.

"(e) The commissioner shall either issue or deny an application for a certificate of authority within 180 calendar days after the date of the application.

"(f) The commissioner and his or her authorized representative shall be prohibited from seeking a waiver to extend the 180 calendar day period specified in subdivision (e), nor shall the applicant be permitted to waive that period."

Willful violation of the statute can be punished either as a felony or a misdemeanor (commonly called a "wobbler")[5] as well as by a monetary fine of up to $100,000, or both by fine and imprisonment. (See Ins. Code, § 700, subd. (b) [". . . a public offense punishable by imprisonment in the state prison, or in a county jail not exceeding one year, or by fine not exceeding one hundred thousand dollars ($100,000), or by both that fine and imprisonment . . . ."].) Also, the violator can be "enjoined by a court of competent jurisdiction on petition of the [Insurance] commissioner." (*Ibid.*)

■ Conspicuously missing, however, from the listed penalties and remedies in the statute is the automatic voiding of any insurance contracts already issued by the unlicensed insurer. As a general rule, as our high court said in *City Lincoln-Mercury Co. v. Lindsey* (1959) 52 Cal.2d 267, 276 [339 P.2d 851], "The courts will not impose penalties for noncompliance with statutory provisions in addition to those that are provided expressly or by necessary implication." (Reiterated in *People ex rel. Van de Kamp v. American Art Enterprises, Inc.* (1983) 33 Cal.3d 328, 334 [188 Cal.Rptr. 740, 656 P.2d 1170] ["However, it is well settled that ' "[c]ourts will not impose penalties for noncompliance with statutory provisions in addition to those that are provided expressly or by necessary implication." ' "].) The rule applies with much greater force in cases where the "penalty" of totally voiding the contract would be felt most by an *innocent* party, such as a consumer who contracted with an out-of-state and unlicensed insurer not knowing that the company possessed no California license.

### B

■ Second, and in that regard, the courts have recognized that there are circumstances when the innocence of a party to an illegal contract must be taken into account in what is called the "in pari delicto" exception. As *McIntosh v. Mills* (2004) 121 Cal.App.4th 333, 347 [17 Cal.Rptr.3d 66] recently observed: "Because of the harsh results that might be visited on innocent parties to a contract when their agreement is voided for illegality, courts have fashioned exceptions [to a rule of invalidity]. . . . [¶] . . . [¶] Perhaps the most common exception to the rule of invalidity . . . is the in pari delicto exception. At its most fundamental level, the exception allows an illegal contract to be enforced 'so long as *the party seeking its enforcement is less morally blameworthy* than the party against whom the contract is being asserted, and there is no overriding public interest to be served by voiding the agreement.' " (Italics added.) And obviously an innocent consumer who buys an insurance contract from an unlicensed insurance company is far "less morally blameworthy" than the company that does not disclose its unlicensed status prior to contracting.

---

[5] (See *Robert L. v. Superior Court* (2003) 30 Cal.4th 894, 902, fn. 9 [135 Cal.Rptr.2d 30, 69 P.3d 951] [explaining legal history of usage of the term].)

## C

And then there is common sense, given that the policy of the law requiring insurers to be licensed is obviously to protect consumers, *not* hurt them. In that regard, we observe that insurance contracts are legally unique: The reason that insurance contracts may be enforced by tort (bad faith) as well as ordinary contract damages is that, unlike all other contracts, a policyholder who is wrongfully denied a claim cannot, by definition, obtain a substitute in the marketplace. Once it is known that the insurable loss has occurred, the insured will not be able to obtain insurance for that loss. (*Cates Construction, Inc. v. Talbot Partners* (1999) 21 Cal.4th 28, 44 [86 Cal.Rptr.2d 855, 980 P.2d 407] ["Unlike other parties in contract who typically may seek recourse in the marketplace in the event of a breach, an insured will not be able to find another insurance company willing to pay for a loss already incurred."].) If the contract were void, then the consumer would bear the entirety of a loss he or she would otherwise have avoided by the payment of a relatively small premium.

Indeed, holding an insurance contract *void* because the insurer was not licensed is about the worst possible remedy for the illegality of the insurer's unlicensed status. To do so would be incredibly harmful to consumers who unknowingly purchased insurance from unlicensed insurers, and who, all of a sudden, would find themselves stuck with a loss which they thought they validly insured against. (See *McIntosh v. Mills, supra,* 121 Cal.App.4th at p. 347 [noting "the harsh results that might be visited on innocent parties to a contract when their agreement is voided for illegality"].)

■ The appellant in this case cites three general Civil Code provisions, sections 1550, 1598, 1667, to argue that an insurance contract made with an unlicensed insurer is flat out void. Of the three, however, only 1598 suggests such a possibility (the other two are essentially definitional).[6] Civil Code section 1598 provides that where a "contract has but a single object, and such object is unlawful, whether in whole or in part . . . the entire contract is void."

■ However, as shown in, e.g., *Marathon Entertainment, Inc. v. Blasi* (2008) 42 Cal.4th 974, 991 [70 Cal.Rptr.3d 727, 174 P.3d 741], Civil Code section 1598 must be read in conjunction with Civil Code section 1599,

---

[6] Civil Code section 1550 says that a contract must have a "lawful object." Section 1667 of the Civil Code says "That is not lawful which is: [¶] . . . [¶] . . . Contrary to an express provision of law . . . ."

which embodies a "companion" principle of severability. Said the *Marathon Entertainment* court: "On the other hand, the text of Civil Code section 1599 is clear. Adopted in 1872, it codifies the common law doctrine of severability of contracts . . . . By its terms, it applies even—indeed, only—when the parties have contracted, in part, for something illegal. Notwithstanding any such illegality, it preserves and enforces any lawful portion of a parties' contract that *feasibly* may be severed." (Italics added.) Civil Code section 1599 provides: "Where a contract has several distinct objects, of which one at least is lawful, and one at least is unlawful, in whole or in part, the contract is void as to the latter and valid as to the rest."

■ In the case of a contract issued by an unlicensed insurer, where the *only* taint of illegality is the unlicensed status of the insurer itself, and the Legislature has already provided a scheme of penalties against that insurer, the contract is readily severable as to any claims that the innocent consumer might present.[7] The "object" of the contract is to provide a consumer with insurance; the consumer never entered into it with the idea of rewarding a company for its unlicensed status. Indeed, as we have said, in the insurance context, *not* to enforce the contract would be to *reward* the violation of law.

## II

Part I of this opinion is all by way of saying that the plaintiff and appellant here, Pedro Medina, has no reason to fear that the insurance contract he obtained from Safe-Guard Products International will not be enforceable as to any valid claims he might present to it. It will be enforceable, despite Safe-Guard's unlicensed status.

But the case is a little more complicated than that, because it is *Medina* who, in this litigation, actually does not want the contract to be enforceable by him. He'd rather be a class action plaintiff whose case depends on the idea that the insurance contract is *not* enforceable.[8]

---

[7] Since this case involves the consumer's potential rights against the insurance company, we may leave aside the question of how the insurer's rights against the consumer would be affected by Civil Code section 1599.

[8] Medina's complaint seeks restitution of money paid for his tire and wheel contract based on the idea that, as an insurance contract, the tire and wheel contract he purchased was ipso facto *void*. He did not request of the trial court, nor has requested of this court on appeal, leave to amend his complaint to allege that his contract was merely *voidable*, and thus he could seek rescission (as distinct from restitution). The idea of a rescission cause of action, of course, presents a number of thorny issues. Rescission requires an offer to *restore* benefits already received under the contract. (E.g., *Resure, Inc. v. Superior Court* (1996) 42 Cal.App.4th 156, 167 [49 Cal.Rptr.2d 354]; Civ. Code, § 1691 [". . . to effect a rescission a party to the contract must, promptly upon discovering the facts which entitle him to rescind . . . : [¶] . . . [¶] (b) Restore to the other party everything of value which he has received from him under the

■ Medina purchased a new 2006 BMW from Crevier Motors and also bought a tire and wheel service contract from Safe-Guard Products International as part of the deal. Safe-Guard has never denied any claim Medina brought to it under the tire and wheel service contract, or given Medina inferior service or products as a result of the contract. However, vehicle service contracts are governed by a series of statutes in the Insurance Code (Ins. Code, § 12800 et seq.), one of which is that providers of vehicle service contracts must be licensed by the state Insurance Commissioner. (§ 12815, subd. (a).) At the time Medina bought his contract, Safe-Guard was not so licensed. Also, Safe-Guard had not, as also required by statute, filed with the Insurance Commissioner specimen contracts (§ 12820, subd. (a)) or an insurance policy backing up 100 percent of its vehicle service contract obligations (§ 12830, subd. (a)). In short, Safe-Guard was not a licensed insurer at the time Medina bought the tire and wheel service (insurance) contract.

The Insurance Commissioner has already proceeded against Safe-Guard for its sin of omission. In 2006 the commissioner's office sought a cease and

---

contract or offer to restore the same upon condition that the other party do likewise, unless the latter is unable or positively refuses to do so."].) In the context of an insurance contract, for example, how would an offer to restore benefits already received play out? Would it be a wash? Medina has already enjoyed a certain amount of *time* in which his tires and wheels were covered, and in which he had a thoroughly enforceable contract. He could only fully restore by paying the value of the coverage already received, which is either equal to the value of the premium paid, or, *at most*, arguably might be an amount discounted by the difference in the market value of coverage received from an unlicensed insurer and the value of the same coverage from a licensed insurer. And even if he did amend his complaint to allege just such a loss of value, what would be the impact of the amendment on his complaint as a class action, since any complaint for rescission as such might implicate more individual considerations not otherwise presented by a complaint for restitution for having received a void contract?

These questions are, we stress, academic to this particular appeal, and therefore can await another day. While a plaintiff even on appeal can most certainly make a showing that an amendment to the complaint will change its legal effect (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2007) ¶ 7:130, p. 7–50 (rev. # 1, 2007)), it is the plaintiff—not the court—who has the burden of showing that an amendment will have such an effect. As the Rutter practice guide states: "*It is not up to the judge to figure out how the complaint can be amended to state a cause of action.* Rather, the burden is on the plaintiff to show in what manner he or she can amend the complaint, and how that amendment will change the legal effect of the pleading." (*Ibid.,* italics added, original italics omitted.) In *Smith v. State Farm Mutual Automobile Ins. Co.* (2001) 93 Cal.App.4th 700, 711 [113 Cal.Rptr.2d 399], the court said: "While such a showing can be made for the first time to the reviewing court [citation], *it must be made.*" (Italics added.)

Here no such showing has been made; Medina has not proposed any amendment based on a cause of action for rescission complete with offer to restore the value of benefits received (Civ. Code, § 1691). He has not even attempted to carry his burden of showing that an amendment would change the legal effect of his complaint. Thus we do not deal with issues attendant upon a theoretical cause of action for rescission based on the contract being voidable as distinct from void.

desist order against Safe-Guard (see Ins. Code, § 12921.8 [authority of commissioner to proceed against persons who needed a license but have acted without it]).

The result was that in 2007 Safe-Guard paid a penalty of $200,000 to the state Insurance Commissioner for its violations.[9] It also paid $5,000 to the Department of Insurance to reimburse it for its costs of investigation and prosecution.

Medina soon brought this action. As noted already, though, the trial court reasoned that Medina had not suffered "injury in fact and has lost money or property as a result" of the unfair competition. Medina has timely appealed from the ensuing judgment of dismissal, asserting that the fact of his payment for the contract, *by itself,* is sufficient to show "injury in fact."

### III

In *Hall v. Time Inc.* (2008) 158 Cal.App.4th 847 [70 Cal.Rptr.3d 466], this court had recent occasion to explore the "injury in fact and has lost money or property as a result of the unfair competition" language from Business and Professions Code section 17204. In *Hall,* a customer agreed to try a book from a publisher for a "free trial period," and eventually paid for the book after the matter was turned over to a collections agency (and long after the free trial period was over). The customer eventually brought a UCL action, alleging that the publisher used misleading and deceitful tactics to fool customers into thinking that, despite the so-called "free" trial period, they were automatically under the obligation to pay for the book. This court held that there was no injury in fact, *despite* the customer's eventual parting with the consideration for the book ($29.51), because the customer did not allege that he didn't want the book in the first place (he did), or that the book was unsatisfactory (it wasn't), or that it was "worth less than what he paid for it." (158 Cal.App.4th at p. 855.)

The same may be said here. Medina has not alleged that he didn't want wheel and tire coverage in the first place, or that he was given unsatisfactory service or has had a claim denied, or that he paid more for the coverage than what it was worth because of the unlicensed status of Safe-Guard. He hasn't suffered any loss *because* of Safe-Guard's unlicensed status.

---

[9] We grant respondents' unopposed motion to take judicial notice of the order, stipulation and waiver entered in the Office of the Insurance Commissioner to that effect.

In supplemental briefing, Medina posits that *Hall* is distinguishable because it involved a defendant that, on its face, was lawfully doing business, and the alleged violation of the UCL centered on a subsequent fraudulent or unfair or unlawful conduct, while here, the very fact that Safe-Guard was doing business *at all* was "*per se*" and "*ipso facto*" unlawful. That is, Medina casts *Hall* into the category where the defendant "was engaged in a lawful economic enterprise but ran afoul of the UCL because of fraudulent or unfair business practices" it had "committed," while here he posits that the very enterprise itself (not being licensed) is unlawful.

This attempted distinction of *Hall*, however, is not persuasive because it treats Proposition 64's amendment of Business and Professions Code section 17204—specifically the addition of the language necessitating that the plaintiff have "suffered injury in fact and ha[ve] lost money or property as a result of the unfair competition"—as identical to the "unlawful, unfair or fraudulent business act or practice" that is actionable under section 17200. The point of the Proposition 64 amendment was to impose *additional* requirements on plaintiffs beyond merely having suffered an "unlawful, unfair or fraudulent business act or practice,"[10] namely, having lost money or property as a result of the act or practice.[11]

This court in *Hall* also stated that even if there was injury in fact by virtue of payment for the book, the "as a result" language imports a *reliance or causation* element into Business and Professions Code section 17204. (See *Hall, supra,* 158 Cal.App.4th at p. 856, citing *Brown v. Bank of America, N.A.* (D.Mass. 2006) 457 F.Supp.2d 82, 89; *Laster v. T-Mobile USA, Inc.* (S.D.Cal. 2005) 407 F.Supp.2d 1181, 1194; *Cattie v. Wal-Mart Stores, Inc.* (S.D.Cal. 2007) 504 F.Supp.2d 939, 948.) Here, there is no allegation that Medina *relied* on Safe-Guard's having a license as required by the vehicle service contract statutes, or that Safe-Guard's unlicensed status *caused* him to part with the money he paid for the tire and wheel contract.

---

[10] Hence *Stevens v. Superior Court* (1999) 75 Cal.App.4th 594 [89 Cal.Rptr.2d 370] (allowing UCL action based on unlicensed status of a managing general agent of a California insurer and insurer's failure to require agent to have a license) is distinguishable, since it predates Proposition 64. *Stevens* never considered the case from the point of view of whether the plaintiff had lost money or property as a result of the agent's unlicensed status, which is what Proposition 64 now requires courts to do. Stevens also predates 2005 amendments to section 12921.8 of the Insurance Code, giving the Insurance Commissioner more power to assess penalties for the conduct of unlicensed insurance business.

[11] In his supplemental briefing, Medina also suggests that *Hall* is distinguishable because in that case the plaintiff obviously "intended the entire exercise as the predicate for a UCL lawsuit" while here Medina had no such intent. However, there is no statutory basis, at least in terms of the Proposition 64 amendment, to differentiate UCL actions based on the subjective *motivation* of the plaintiff; the differentiation is between instances where there is actual loss of property versus no such loss.

The judgment of dismissal is affirmed. Respondents are to recover their costs on appeal.

Moore, J., and Aronson, J., concurred.

On July 11, 2008, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied September 24, 2008, S165525. Corrigan, J., did not participate therein.