Filed 3/27/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| MICHAEL DEMETER, | B276192 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC499608) |
| v. | |
| TAXI COMPUTER SERVICES, INC., et al., | |
| Defendants and Respondents. | |

APPEAL from summary judgment of the Superior Court of Los Angeles County, Elihu M. Berle, Judge.  Affirmed.

Lakeshore Law Center, Jeffrey N. Wilens; The Spencer Law Firm and Jeffrey P. Spencer for Plaintiff and Appellant.

Law Offices of David J. Vendler and David J. Vendler for Defendants and Respondents.

Plaintiff and appellant Michael Demeter (Demeter) filed a putative class action complaint against defendants and respondents Taxi Computer Services, Inc. (TAXI) and its CEO Michael Laskow (Laskow). The complaint alleged TAXI operated a talent listing service without procuring the bond California's Fee-Related Talent Services Law (FTSL) requires "for the benefit of any person injured by any unlawful act, omission, or failure to provide the services of the talent service." (Lab. Code, § 1703.3, subd. (b).) Demeter alleged causes of action under the FTSL itself and under California's Unfair Competition Law (UCL) (Bus. & Prof. Code, § 17200 et seq.). TAXI and Laskow moved for summary judgment, arguing Demeter was not aware of the bond requirement when he signed up with TAXI and suffered no injury because he had no complaints about the service TAXI offered. The trial court agreed with TAXI and Laskow, and we consider whether the trial court properly granted summary judgment in their favor.

## I. BACKGROUND

### A. TAXI and Demeter

TAXI is an "Artist & Repertoire" corporation that works with companies, publishers, and supervisors in the music industry who are looking for composers and songs for their artists, or for TV and film placements. Based on information provided by industry professionals, TAXI creates and posts listings on its website describing the type of music sought and the submission deadline. TAXI members pay an annual flat fee for access to TAXI's listings and other services, plus an additional $5.00 fee to submit music in response to a listing on the TAXI website.

2

Demeter is a musician and DJ who has worked in the music industry for thirty years. In early December 2012, Demeter purchased a one-year TAXI membership via TAXI's website for $299.95.

When Demeter purchased his TAXI membership, he was directed to a webpage that required him to provide his name, email address, and other information. As part of the purchase process, Demeter was required to agree to TAXI's Terms and Conditions. The webpage included the following text: "Please read these Terms and Conditions before pressing the button below. By pressing the 'Join TAXI Now!' button below, you agree to pay the amount shown above and abide by our terms." The words "Terms and Conditions" in the above text were in blue, and were hyperlinked to another webpage that set forth the terms and conditions. In order to join TAXI, a prospective member was required to click the "Join TAXI Now!" button. TAXI's user agreement provided TAXI members could request a full refund (if they were dissatisfied with TAXI's listings, feedback, or customer service) for up to 365 days after purchasing a TAXI membership.

Demeter did not do "too much" research before joining TAXI, though he had heard about the company and read parts of TAXI's website before signing up. Demeter did not know about the FTSL prior to joining TAXI, nor did he know of the law's bond requirement. The day Demeter paid for his membership, the TAXI website represented TAXI had either an "A+" or "A-" rating with the Better Business Bureau.

B.    *Demeter's Complaint*

Roughly six weeks after he purchased his membership, Demeter filed a putative class action complaint alleging (1) TAXI

3

had not procured the $50,000 bond required by the FTSL at the time Demeter paid for his membership, (2) TAXI failed to provide Demeter with a written contract that satisfied the requirements of the FTSL, including an advisement that TAXI had complied with the bonding requirement, and (3) the TAXI website represented the company had an A+ or A- rating with the Better Business Bureau (BBB) when, in truth, TAXI had no rating when his complaint was filed because "the BBB does not rate talent services that are not in compliance with California law." The operative complaint further alleged a violation of the UCL because TAXI and Laskow "violated the FTSL . . . and therefore engaged in unfair competition." The operative complaint's prayer for relief sought, among other things, payment of Demeter's attorney fees, treble compensatory damages under the FTSL, and restitution and injunctive relief under the UCL.

C.     *TAXI and Laskow's Motion for Summary Judgment*

TAXI and Laskow's motion for summary judgment (for simplicity's sake, we will refer to it as TAXI's motion) argued Demeter could not prevail at a trial on his cause of action alleging a violation of the FTSL because he could not establish he had been injured by TAXI's failure to obtain the requisite bond or by the absence of any reference to the bonding requirement (and other statutorily required terms) in the terms and conditions to which Demeter agreed when purchasing his membership online.

As to the failure to obtain the bond itself, TAXI argued Demeter could not demonstrate he had suffered an injury entitling him to sue because he had not relied on the bond requirement when purchasing his membership (indeed, he was unaware of the obligation imposed by law) and he had received

4

the services he was promised. As to the absence of a reference to the statutorily-required bond and other alleged deficiencies in TAXI's online terms and conditions, TAXI argued the alleged violation of the FTSL's provision governing the form of talent services contracts merely rendered TAXI's contract with Demeter voidable, not void, which meant the contract was not illegal and could not have been injurious. TAXI further argued, as to Demeter's UCL claim, that he could not establish standing or causation because he could not establish he had suffered an "injury in fact" caused by the asserted violation of the FTSL.

TAXI's summary judgment motion also maintained Demeter could not prove his suit was necessary to redress an injury because he had not availed himself of the contract provision that would permit him to obtain a full refund of the membership fee he paid. The motion cited evidence suggesting Demeter instead was a "stalking horse" for a competing company and had purchased a TAXI membership simply for the purpose of attempting to establish a predicate for bringing suit. In TAXI's view, this meant that insofar as Demeter had suffered any injury, the injury was "self-inflicted" and therefore insufficient to support a lawsuit.

In opposition, Demeter argued he had been injured by TAXI's alleged violations of the FTSL (and, correspondingly, the UCL) because he would not have paid TAXI's membership fee if he had known TAXI was violating legal requirements and thus was "an illegal company." He acknowledged he had not attempted to cancel his contract with TAXI (i.e., invoked his contractual right to a refund) prior to filing suit, but claimed a full-blown lawsuit was nevertheless a proper means for seeking to void the contract. Demeter further asserted TAXI's "stalking

5

horse" argument was meritless because TAXI had not presented evidence demonstrating Demeter had knowledge of TAXI's violation before purchasing a membership.

The trial court granted TAXI's motion for summary judgment. In doing so, the trial court found TAXI's evidence "demonstrate[d] [Demeter's] legal rights were not invaded by [TAXI's] alleged failure to comply with contractual bonding requirements in the FTSL" and concluded they had "brought forth proof that plaintiff has not suffered an injury sufficient to allow him to assert his FTSL claim." The trial court concluded TAXI had satisfied its burden to show Demeter could not establish the requisite element of injury for either his FTSL or UCL cause of action, and therefore could not establish a triable issue of material fact with respect to the viability of his UCL or FTSL claim.

## II.  DISCUSSION

Demeter claims he was injured by TAXI's alleged violations of the FTSL—failure to provide him with an FTSL-compliant contract and failure to obtain a bond—because he would not have purchased a TAXI subscription if he had known TAXI was not complying with the law. The dispositive question before us reduces to whether that is a cognizable injury under the FTSL. We conclude it is not. Because TAXI's alleged failure to provide Demeter with an FTSL-compliant contract rendered the contract merely voidable, not per se illegal, Demeter's theory of injury fails as to that asserted violation. And because Demeter both admitted he did not know TAXI was required to have a bond before he purchased his membership and failed to provide any evidence he suffered some injury that might have entitled him to

6

collect on such a bond, Demeter failed to demonstrate the existence of a triable issue of material fact regarding any injury caused by the absence of a bond.  In other words, Demeter's FTSL claim amounts to no more than an assertion Demeter was injured by TAXI's noncompliance with the FTSL, but that mere noncompliance is not an injury caused "by a violation" of the FTSL.

For similar reasons, Demeter's evidence also failed to raise a triable issue of material fact as to whether he suffered an economic injury caused by TAXI's alleged violations of the FTSL, which he must to establish standing to sue under the UCL. Neither of his causes of action being viable, we affirm the trial court's grant of summary judgment.

### A.     Standard of Review

"'"'A trial court properly grants a motion for summary judgment only if no issues of triable fact appear and the moving party is entitled to judgment as a matter of law.  (Code Civ. Proc., § 437c, subd. (c); [citation].)  The moving party bears the burden of showing the court that the plaintiff "has not established, and cannot reasonably expect to establish,"' the elements of his or her cause of action.  [Citation.]" [Citation.]  We review the trial court's decision de novo, liberally construing the evidence in support of the party opposing summary judgment and resolving doubts concerning the evidence in favor of that party.'  (*State of California v. Allstate Ins. Co.* (2009) 45 Cal.4th 1008, 1017-1018[ ].)"  (*Ennabe v. Manosa* (2014) 58 Cal.4th 697, 705.)

7

*B.      Demeter's FTSL Claim*

*1.      Overview of the FTSL*

The FTSL regulates the relationship between "talent services" and artists in the entertainment industry.  Among the talent services regulated are "talent listing services" that provide artists with lists of auditions or employment opportunities.  (Lab. Code, § 1701, subd. (g)(1)-(4).[1])  As relevant here, the FTSL requires talent services to obtain a bond or make a deposit in lieu of a bond "[p]rior to advertising or engaging in business." (§ 1703.3, subd. (a).)  The bond is required "for the benefit of any person injured by any unlawful act, omission, or failure to provide the services of the talent service."  (§ 1703.3, subd. (b).)

The FTSL also specifies, in certain respects, the form and content for contracts between talent services and artists.  Any such contracts must include, as relevant here:  a description of the services to be performed, when they are to be provided, and the duration of the contract; "[e]vidence of compliance with applicable bonding requirements, including the name of the bonding company and the bond number, if any, and a statement that a bond in the amount of fifty thousand dollars . . . must be posted with the Labor Commissioner"; and, where the contract is to be executed over the internet, a "clear and conspicuous notice of the contract terms" with an opportunity for the artist "to acknowledge receipt of the terms before acknowledging agreement thereto."  (§ 1703, subds. (a)(2)-(3), (b).)

The FTSL's legislative history indicates it is intended to "safeguard the public against fraud, deceit, imposition, and

---

[1]      Undesignated statutory references that follow are to the Labor Code.

8

financial hardship, and to foster and encourage competition, fair dealing, and prosperity in the field of talent services by prohibiting or restricting false or misleading advertising and other unfair, dishonest, deceptive, destructive, unscrupulous, and fraudulent business practices by which the public has been injured in connection with talent services."  (Assem. Bill No. 1319 (2009-2010 Reg. Sess.) § 1.)  The FTSL expanded regulation of talent services in an effort to protect the public.  (Sen. Jud. Com. Analysis of AB 1319 (2009-2010 Reg. Sess.) as amended June 15, 2009, pp. 1-2.)

### 2.    *The FTSL's remedial provisions*

In keeping with its intent to safeguard the public against injury from talent services, the FTSL provides several different enforcement mechanisms and remedies.

First, the FTSL gives artists the right to cancel talent services contracts in three circumstances.  An artist may cancel a contract for whatever reason within ten business days and receive a full refund.  (§ 1703, subd. (e)(1).)  If a contract does not conspicuously state cancellation is prohibited after the ten-day period, an artist may cancel the contract at any time for a pro rata refund.  (§ 1703, subd. (e)(2).)  (TAXI's refund policy, which allows TAXI customers a full year to request a full refund, is more generous than the statutorily required refund period.)  The FTSL further provides any contract subject to section 1703 that "does not comply with subdivisions (a) to (f) [i.e., the provisions governing the form and content of contracts subject to the FTSL, including the provisions that require the contract to provide evidence of compliance with the bonding requirement] . . . is *voidable* at the election of the artist and may be canceled by the

9

artist at any time without any penalty or obligation." (§ 1703, subd. (d), italics added.)

Second, the FTSL authorizes "[t]he Attorney General, a district attorney, or a city attorney [to] institute an action for a violation of this chapter, including an action to restrain and enjoin a violation." (§ 1704.1.)

Third, the FTSL authorizes any "person who *is injured by a violation of this chapter* or by the breach of a contract subject to this chapter" to bring suit "for recovery of damages or to restrain and enjoin a violation, or both." (§ 1704.2, italics added.) It further specifies the "amount awarded for damages for a violation of this chapter shall be not less than three times the amount paid by the artist, or on behalf of the artist, to the talent service or the advance-fee talent representation service." (§ 1704.2.)

The FTSL thus provides artists with different remedies for different types of violations of the statute. Where a talent service has failed to provide an artist with a contract that complies with the FTSL, the contract is voidable at the election of the artist—even if the artist suffered no injury as a result of the noncompliant contract. (§ 1703, subd. (d).) Where a talent service has violated any provision of the FTSL or breached a contract subject to the FTSL and that violation or breach has caused injury to an artist, the artist may sue for damages and injunctive relief. (§ 1704.2.) Implicit in the provision of different remedies to artists who were "injured by" a violation and those who were not is an acknowledgment that a violation of the FTSL does not itself constitute injury. In other words, the FTSL does not allow an individual (as opposed to one charged with the duty to prosecute on behalf of the public, as specified in section 1704.1)

10

to seek redress in court based solely on a failure to comply with its provisions.

### 3. The summary judgment evidence demonstrates Demeter cannot prove he was injured by the alleged violations

In its summary judgment motion, TAXI challenged Demeter's assertion he had suffered injury as a result of the alleged FTSL violations.  As just discussed, in order to bring suit under the FTSL, Demeter would be required at trial to demonstrate more than a mere violation of the statute.  (Compare § 1704.2 [permitting a person "injured by a violation" to bring suit] with § 1703, subd. (d) [permitting an artist to void a contract where there is a violation, without any requirement that "injury" be shown].)  TAXI submitted excerpts from Demeter's deposition testimony in which he admitted (a) he had not known about the FTSL or its bonding requirement when he signed up for TAXI, (b) the presence or absence of a bond had not impacted his decision to join TAXI, and (c) TAXI had not provided him with any guarantees.

Demeter provided scant evidence in response, primarily relying on his testimony that he would not have paid some $300 to join TAXI if he had known it was "operating illegally." Demeter also relied on his testimony that the TAXI website represented it had an A+ BBB rating the day he signed up. Demeter did not provide evidence demonstrating he expected TAXI to comply with the FTSL, or that TAXI promised compliance with the FTSL, as part of his TAXI membership.

We conclude Demeter failed to provide evidence sufficient to create a triable issue of material fact as to whether he was

11

injured by TAXI's alleged failure to provide him with an FTSL-compliant contract. The alleged violation neither rendered Demeter's contract with TAXI illegal nor rendered TAXI an "illegal" operation; it merely made Demeter's contract with TAXI voidable (see § 1703, subd. (d)). Demeter's theory of liability asserting he suffered an injury because TAXI provided an "illegal" contract therefore fails on its own terms.

Demeter argues he is nevertheless entitled to use a lawsuit as a means of voiding his contract with TAXI regardless of whether he has suffered any injury. But the FTSL does not provide a private right of action for such a claim. While the FTSL permits an artist to cancel a contract that violates section 1703, subdivisions (a) to (f) by written notice even in the absence of any injury, it does not authorize an artist to file a lawsuit to cancel an agreement in violation of the statute unless the artist suffered an injury caused by the violation.[2] (§§ 1703, 1704.2.) To the extent Demeter would argue he can maintain a nonstatutory action for cancellation of the contract, the argument fails because he has not pled any such cause of action.

Demeter also did not provide evidence sufficient to create a triable issue of material fact as to his other alleged theory of liability: TAXI's lack of a bond at the time Demeter purchased his membership. The FTSL's required bond is "for the benefit of any person injured by any unlawful act, omission, or failure to provide the services of the talent service." (§ 1703.3, subd. (b).)

---

[2]     Indeed, apart from the attorney fees and treble damages that are available for a plaintiff (unlike Demeter) who actually suffers an injury, one wonders why any plaintiff would go to the trouble of filing a lawsuit to seek cancellation when a simple written notice would suffice.

Demeter's evidence established no "unlawful act, omission, or failure to provide" services for which he might have been eligible to seek recourse against the (nonexistent) bond. Rather, he testified during deposition that TAXI sent him emails regarding potential opportunities in the music industry, provided him with access to a database of opportunities and an online forum, and allowed him to upload songs to the TAXI website. Though Demeter testified he decided TAXI's listings were "unprovable" and "sketchy," he did not identify any promised services TAXI failed to provide and provided no evidence the listings were in fact illegitimate.

Demeter counters he considered the TAXI website's representation that TAXI had an A+ BBB rating when purchasing a TAXI membership, and he contends this shows TAXI was operating illegally and he would not have joined TAXI if he had known it was illegal. This, however, is not sufficient to establish a trial is necessary to resolve his FTSL claim because the asserted BBB misrepresentation is not a violation of the terms of the FTSL.

At most, Demeter demonstrated he paid approximately $300 for his TAXI membership—a fee which was refundable both under the terms of the FTSL (§ 1703, subds. (d), (e)) and under the terms of TAXI's 365-day refund policy—when, unbeknownst to him, TAXI had not complied with certain provisions of the FTSL that did not impact the service the company agreed to provide him and did not make it more difficult to recover for a harm he never suffered. The FTSL requires more; a violation of its terms alone will not suffice. (See § 1704.2 [authorizing a "person injured by a violation" to bring suit].) If an injury were held to exist based solely on an artist's expectation that a talent

13

service will not violate the FTSL, then injury would exist in any situation where a talent service violates the FTSL, regardless of whether there is actual harm to the artist. That is no "injury" at all.[3] (See, e.g., *Nunneley v. Edgar Hotel* (1950) 36 Cal.2d 493, 498 ["no liability can be predicated upon noncompliance with a statutory command if the act or omission had no causal connection with the plaintiff's injury"]; *Richter v. CC-Palo Alto, Inc.* (N.D.Cal. 2016) 176 F.Supp.3d 877, 893 [noting "non-compliance with a statutory scheme is not an independent injury that itself confers standing" and holding plaintiffs lacked standing where they had not "alleged any distinct injury as a result of Defendants' purported non-compliance" with provisions of the Health and Safety Code]; *Boorstein v. Men's Journal LLC* (C.D.Cal. June 14, 2012, No. CV 12-771 DSF) 2012 U.S.Dist. LEXIS 83101, *4, *10 ["If injury exists based solely on the consumer's expectation that the defendant will not violate a law, then injury exists in any situation where a business violates a law, regardless of whether there is actual harm to the consumer. This type of injury is not cognizable under the [Shine the Light]

---

[3]     Our conclusion is supported by the FTSL's legislative history, which indicates the Legislature intended the law to provide redress for injuries such as monetary loss, emotional harm, and identity theft. (Assem. Com. on Labor and Employment Analysis of AB 1319 (2009-2010 Reg. Sess.) as amended April 15, 2009, pp. 13-14.) That is not to say, of course, that the FTSL provides no mechanism to enforce compliance with its terms absent injury. Public prosecutors (the Attorney General, district attorneys, and city attorneys) are entitled to sue to restrain and enjoin mere violations that have not caused injury. (§ 1704.1.)

14

law" which provides a private right of action to consumers "injured by a violation" of the statute].)

### C. *Demeter's UCL Claim*

"The UCL prohibits, and provides civil remedies for, unfair competition, which it defines as 'any unlawful, unfair or fraudulent business act or practice.' ([Bus. & Prof. Code, ]§ 17200.) Its purpose 'is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services.' [Citations.]" (*Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 320 (*Kwikset*).)

"A 'private person has standing to sue under the UCL only if that person has suffered injury and lost money or property "as a result of such unfair competition." [Citation.]' (*Daro*[ *v. Superior Court* (2007)] 151 Cal.App.4th [1079,] 1098, italics omitted.) To satisfy the UCL standing requirement, the plaintiff must '(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury, and (2) show that that economic injury was the result of, i.e., caused by, the unfair business practice or false advertising that is the gravamen of the claim.' [Citation.]" (*Two Jinn, Inc. v. Government Payment Service, Inc.* (2015) 233 Cal.App.4th 1321, 1331 (*Two Jinn*).) "In order to pursue a UCL claim, the plaintiff must show that the practices that it characterizes as unlawful caused it to suffer an actual economic injury." (*Id.* at p. 1333.)

As we have explained, the only loss of money or property asserted by Demeter was the money he spent to purchase his TAXI membership. But the evidence before the trial court on summary judgment was inadequate to establish a factual dispute concerning whether the practices he characterizes as unlawful

15

(the failure to provide an FTSL-compliant contract and the absence of a bond) caused him to suffer an actual economic injury. Demeter adduced no evidence that TAXI's alleged failure to provide him with a written contract containing the terms required by the FTSL (such as a description of the services to be performed or evidence of the bond requirement) caused him to pay for his TAXI membership. Similarly, he provided no evidence he expected TAXI to have a bond when he purchased his membership. To the contrary, his deposition testimony indicated he did not know about the FTSL when he purchased his membership, did not know the FTSL applied to TAXI, and did not know the FTSL required talent services to post a bond. Because Demeter admitted he did not know about the bond requirement when he purchased his TAXI membership, he cannot establish "the practices that [he] characterizes as unlawful caused [him] to suffer an actual economic injury." (*Two Jinn*, *supra*, 233 Cal.App.4th at p. 1333.)

Demeter's evidence regarding TAXI's BBB rating cannot save the lack of the requisite injury for UCL purposes because Demeter's operative complaint did not allege a UCL violation based on that misrepresentation. Instead, the UCL cause of action was expressly premised only on the allegation that "Defendants violated the FTSL . . . and therefore engaged in unfair competition." Because the BBB representation is not an actionable violation of the FTSL, Demeter cannot now rely on that allegation to argue a jury must decide whether he was injured for purposes of the UCL.[4] (See *Hutton v. Fidelity*

---

[4] Even if we were to consider Demeter's BBB allegation as a separate ground for his UCL claim, we would conclude he has not provided sufficient evidence of injury to survive summary

16

*National Title Co.* (2013) 213 Cal.App.4th 486, 493; *Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1253-1254.)

Demeter's citations to *In re Steroid Hormone Product Cases* (2010) 181 Cal.App.4th 145 and *Kwikset* are accordingly inapposite. *In re Steroid Hormone Product Cases* discussed the plaintiff's theory of injury and damage in the context of determining whether reliance on the alleged misrepresentation could be inferred on a classwide basis, not whether the plaintiff had demonstrated an injury sufficient to confer statutory standing. (*In re Steroid Hormone Product Cases*, *supra*, at p. 157.) *Kwikset* considered a demurrer challenging a plaintiff's standing to bring a UCL claim where the plaintiff alleged reliance on a label that stated the product he purchased was "made in the USA," and our Supreme Court concluded the allegation was sufficient to demonstrate an injury at the pleading stage because the plaintiffs alleged they had purchased the product in reliance on a misrepresentation and had not received the benefit of the bargain. (*Kwikset*, *supra*, 51 Cal.4th at p. 332.) The facts here are entirely dissimilar where it is undisputed at summary judgment that TAXI made no affirmative representation concerning the FTSL's bond requirements and Demeter was unaware of those requirements when he opted to purchase a TAXI membership.

Instead, this case is more analogous to *Medina v. Safe-Guard Products* (2008) 164 Cal.App.4th 105. In that case, the

---

judgment. The deposition excerpts submitted with the summary judgment record do not include any testimony stating Demeter would not have purchased his TAXI membership if he had known the BBB rating representation was false.

plaintiff purchased a vehicle service contract, which was allegedly an insurance contract, from a company not licensed to sell insurance in California. (*Id.* at 108.) The plaintiff alleged he had demonstrated injury-in-fact simply by paying for the contract. (*Id.* at 114.) The Court of Appeal disagreed, noting "Medina has not alleged that he didn't want wheel and tire coverage in the first place, or that he was given unsatisfactory service or has had a claim denied, or that he paid more for the coverage than what it was worth because of the unlicensed status of Safe-Guard." (*Ibid.*) Similarly here, Demeter has not provided evidence that the service he purchased from TAXI was somehow not up to par, nor has he established a dispute of fact concerning whether the amount he paid for his TAXI membership was more than it was worth because of TAXI's (then) unbonded status.

DISPOSITION

The judgment is affirmed.  Respondents shall recover their costs on appeal.

**CERTIFIED FOR PUBLICATION**


BAKER, J.


We concur:


KRIEGLER, Acting P.J.


DUNNING, J.[*]

---

[*]    Judge of the Orange Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

19