Filed 6/24/21  Kruskol v. Apple CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| MARC KRUSKOL, | B302495 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 19STCV11737) |
| v. | |
| APPLE, INC., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Rupert A. Byrdsong, Judge.  Affirmed.

Milstein Jackson Fairchild & Wade, Gillian L. Wade, Sara D. Avila, and David F. Slade for Plaintiff and Appellant.

Covington & Burling, Mitchell A. Kamin, Emily Johnson Henn, Neema T. Sahni, Patrick R. Carey, and Carlton E. Forbes for Defendant and Respondent.

# I.  INTRODUCTION

Plaintiff Marc Kruskol appeals from a judgment following the trial court's sustaining of a demurrer without leave to amend. We affirm.

# II.  FACTUAL BACKGROUND

"On demurrer review, we accept the truth of material facts properly pleaded, but not contentions, deductions, or conclusions of fact or law.  We may also consider matters subject to judicial notice." (*State Dept. of State Hospitals v. Superior Court* (2015) 61 Cal.4th 339, 346.)  We summarize the facts alleged by plaintiff in the second amended complaint as follows.

Defendant Apple, Inc. (Apple) sells, among other devices, iPhones that use the "iOS" operating system.  Apple releases new models of iPhones on a semi-annual basis and also regularly updates the operating system, including with security patches and repairs to existing flaws.  Apple designs the operating system updates in order to optimize the performance of the latest-model iPhone.  Such updates, however, strain the hardware, including the batteries, of earlier models.

On December 14, 2014, plaintiff purchased an iPhone 6.  By late 2016, older-model iPhones were experiencing extremely decreased performance due to battery degradation and, in many instances, were shutting off completely.

In January 2017, Apple introduced an operating system update that prevented unexpected shut downs by slowing the performance of older-model iPhones, including the iPhone 6. During 2017, users of older-model iPhones, including plaintiff,

2

updated the operating system, which resulted in decreased performance and battery degradation. Many users, including plaintiff, thus elected to replace the batteries on their older-model iPhones with third-party batteries.

In December 2017, Apple announced that throughout 2018, it would offer a discounted price on battery replacements for iPhone 6 and later models, which would cost $29 instead of the usual cost of $79 (reduced-price battery replacement program). The reduced-price battery replacement program, however, excluded consumers, like plaintiff, who had replaced the batteries of their iPhones with third-party batteries.

On December 23, 2018, plaintiff went to an Apple store in Century City to have his iPhone battery replaced as part of the reduced-price battery replacement program. An employee at the store advised plaintiff that his iPhone did not qualify for the program because it contained a third-party battery. Plaintiff was also turned away by the Apple store in Valencia.

Effective February 28, 2019, after the termination of the reduced-price battery replacement program, Apple reversed its policy of refusing to service iPhones with third-party batteries.

## III.  PROCEDURAL BACKGROUND

A.    *UCL Claim*

On April 4, 2019, plaintiff filed his initial complaint against Apple for violation of the Unfair Competition Law (UCL; Bus. & Prof. Code[1], § 17200 et seq.).  On June 10, 2019, plaintiff filed his

---

[1]    Further statutory references are to the Business and Professions Code.

first amended complaint; and, on July 23, 2019, he filed the operative second amended complaint.

The second amended complaint alleged a single cause of action for violation of the UCL. Specifically, plaintiff alleged that Apple engaged in an unfair business practice by "establishing discriminatory repair policies (*i.e.*, refusing to repair Apple products, wholesale, if they contained third-party aftermarket parts) thereby depriving customers of the benefit of the reduced-price battery replacement program and potentially continuing to harm customers by refusing to service its products if customers previously resorted to third-party repair." Plaintiff also alleged that Apple's conduct was fraudulent as Apple falsely represented that its discriminatory repair policies were "lawful, thereby depriving customers of the benefit of the reduced-price battery replacement program and potentially continuing to harm customers by refusing to service its products if customers previously resorted to third-party repair."

Plaintiff alleged that he was injured by Apple's practice because: "he was deprived of the right to replace his iPhone battery at a reduced cost (thus losing the benefit of a $29 battery, and instead being forced to pay $79 if he wishes to have a replacement Apple battery); unless and until he purchases an Apple battery, he is at risk of . . . limiting or even disabling his phone's functionality; and he lost time at work attempting to exercise his rights under Apple's reduced-price battery replacement program (and had attendant travel-related costs)."

Although plaintiff acknowledged that even before he filed his initial complaint, Apple had reversed its policy of refusing to service iPhones with third-party batteries, plaintiff alleged that Apple had "not publicly confirmed the existence of this policy

4

reversal, nor does the public know the full contours of this new policy." And, "[n]othing prohibits Apple from doing something similar in the future, to the detriment of the general public."

Plaintiff requested, as relief, a judgment "enjoining Apple from further unlawful, unfair and/or fraudulent practices with respect to the repair policies associated with Apple products and requiring Apple to provide [re-institution of the reduced-price battery replacement program to] members of the public who had their Apple products serviced by a third party, including those members of the public whom Apple previously turned away for $29 battery replacements." He also sought attorney fees and "[a]ll other such relief as may be appropriate."

## B.    *Demurrer*

On August 8, 2019, Apple filed its demurrer to the second amended complaint. Apple argued, among other things, that plaintiff had failed to allege he was entitled to relief under the UCL, which only authorizes the remedies of restitution and injunction. Plaintiff opposed the demurrer, arguing that he had sufficiently alleged he was entitled to restitution because he and other members of the general public paid substantial sums of money for their iPhones, which were diminished in value by "precisely $50 . . . ." Plaintiff also contended that the second amended complaint sufficiently alleged he was entitled to injunctive relief, namely: "(1) a re-institution of Apple's reduced-price battery replacement program, for iPhone owners with third-party batteries who were originally excluded; and (2) an order enjoining Apple from engaging in and/or resuming its unfair and fraudulent business practices . . . ."

5

On September 6, 2019, the trial court conducted a hearing on the demurrer and sustained it, without leave to amend. On September 11, 2019, the court entered judgment in favor of Apple, from which plaintiff timely appealed.

## IV.  DISCUSSION

A.    *Standard of Review*

"In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.]  We also consider matters which may be judicially noticed.' (*Serrano v. Priest* (1971) 5 Cal.3d 584, 591 . . . .) Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. (*Speegle v. Board of Fire Underwriters* (1946) 29 Cal.2d 34, 42 . . . .)  When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. (See *Hill v. Miller* (1966) 64 Cal.2d 757, 759 . . . .)  And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment:  if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. (*Kilgore v. Younger* (1982) 30 Cal.3d 770, 781 . . . ; *Cooper v. Leslie Salt Co.* (1969) 70 Cal.2d 627, 636 . . . .)  The burden of proving such reasonable possibility is squarely on the plaintiff. (*Cooper v. Leslie Salt Co., supra,* [70 Cal.2d] at p. 636.)" (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

B.	*Demurrer*

"California's unfair competition law . . . defines 'unfair competition' to mean and include 'any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by [the false advertising law (§ 17500 et seq.)].' (§ 17200.)  The UCL's purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services." (*Kasky v. Nike, Inc.* (2002) 27 Cal.4th 939, 949.)

A UCL action only entitles a plaintiff to certain limited relief.  Damages are not available; "'[p]revailing plaintiffs are generally limited to injunctive relief and restitution.'"  (*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1144 (*Korea Supply*); *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 179; see § 17203.)  A trial court properly sustains a demurrer where a complaint fails to allege the existence of a viable remedy under the UCL.  (*Madrid v. Perot Systems Corp.* (2005) 130 Cal.App.4th 440, 467 (*Madrid*); see *Gruenberg v. Aetna Ins. Co.* (1973) 9 Cal.3d 566, 572 [in order to survive demurrer, a plaintiff must "'plead facts showing that he may be entitled to some relief'"].)

1.	Restitution

"'Restitution under . . . section 17203 is confined to restoration of any interest in "money or property, real or personal, which may have been *acquired* by means of such unfair competition."  (Italics added.)  A restitution order against a defendant thus requires both that money or property have been

7

lost by a plaintiff, on the one hand, and that it have been acquired by a defendant, on the other.'" (*Zhang v. Superior Court* (2013) 57 Cal.4th 364, 371 (*Zhang*).) "[T]he California Supreme Court has defined a UCL order for restitution as one '"compelling a UCL defendant to return money obtained through an unfair business practice to those persons in interest from whom the property was taken, that is, to persons who had an ownership interest in the property or those claiming through that person." [Citation.]' (*Korea Supply, supra*, 29 Cal.4th 4th at pp. 1144–1145 . . . .)" (*Madrid, supra*, 130 Cal.App.4th at p. 453.) "The object [of restitution] is to return to the plaintiff '"funds in which he or she has an ownership interest."'" (*People ex rel. Harris v. Aguayo* (2017) 11 Cal.App.5th 1150, 1168.)

Plaintiff contends that he sufficiently alleged an entitlement to restitution because his exclusion from the reduced-price battery replacement program diminished the value of his iPhone by $50, which represented "the difference in battery price for repairs of 'acceptable' phones vs. phones that had third-party batteries." (Fn. omitted.) The diminution in the value of plaintiff's iPhone, however, even if arguably relevant to measure damages, is insufficient to demonstrate that Apple obtained a thing of value from plaintiff.[2]

Plaintiff additionally argues that he is entitled to restitution because Apple acquired money from him in 2014 when plaintiff purchased his iPhone 6. We disagree. Plaintiff did not

---

[2] Plaintiff cites to an unpublished United States District Court opinion in support of his contention that "'"diminution in value" is a proper measure of restitution under the UCL.'" We disagree with this statement as contrary to *Zhang, supra*, 57 Cal.4th at p. 371.

allege that Apple obtained money ""through an unfair business practice"" when it sold him his iPhone. (*Madrid, supra*, 30 Cal.App.4th at p. 453.) Indeed, the business practice at issue in the second amended complaint allegedly occurred years after plaintiff purchased his iPhone.

As alleged in the second amended complaint, Apple did not acquire any money from plaintiff in connection with plaintiff's unsuccessful efforts to participate in the reduced-price battery replacement program.[3] Rather, Apple refused to provide services to him. Plaintiff therefore failed sufficiently to allege that he is entitled to restitution.

### 2. Injunctive Relief

We next consider whether plaintiff sufficiently alleged that he was entitled to injunctive relief. "A trial court has broad authority to enjoin conduct that violates section 17200. [Citation.] That authority is expansive but not unlimited. Although the [UCL] imposes liability for past acts, in order to grant injunctive relief under section 17204 . . . , there must be a threat that the wrongful conduct will continue. 'Injunctive relief will be denied if, at the time of the order of judgment, there is no reasonable probability that the past acts complained of will recur, i.e., where the defendant voluntarily discontinues the wrongful conduct.'" (*Colgan v. Leatherman Tool Group, Inc.* (2006) 135 Cal.App.4th 663, 702 (*Colgan*); *Davis v. Farmers Ins. Exchange* (2016) 245 Cal.App.4th 1302, 1326–1327; *Madrid, supra*, 130 Cal.App.4th at pp. 464–465.)

---

[3] Nor did Apple acquire money from plaintiff when plaintiff purchased a battery from a third party.

Here, the second amended complaint acknowledged that effective February 28, 2019, Apple reversed its purportedly discriminatory policy of refusing to service iPhones with third-party batteries. Plaintiff nonetheless contends that he sufficiently alleged ongoing harm. He cites in support allegations in the complaint that: "it is unclear if there is a company-wide mandate that stores *must* repair devices showing signs of third-party repair, or if it is discretionary. It is unclear whether the policy only implicates batteries on iPhone and iPads or extends to other Apple devices and components that are reportedly malfunctioning, such as, *inter alia*, keyboards on Apple laptops. Thus, it is presently unknown whether Apple actually did change its discriminatory practice and, if so whether it will resume it or engage in *new* discriminatory practices regarding third-party repairs and parts. [Fn. omitted.]"[4]

That it is "unknown" to plaintiff whether Apple will reimplement its prior policy prohibiting repairs on iPhones with

---

[4] Plaintiff additionally cites to footnote 11 of the second amended complaint in support of his contention that he sufficiently alleged ongoing harm. That footnote explained why customers, who had installed third-party batteries, would want to purchase a new iPhone battery. Such explanation has no bearing on whether plaintiff sufficiently alleged that he was entitled to injunctive relief. The footnote additionally alleged that "[n]othing prohibits [Apple] from issuing . . . software updates in the future, which may disable, completely, phones with third-party batteries." This allegation is irrelevant to the business practice at issue in the complaint; and, as we explain below, an allegation that "[n]othing prohibits" Apple from engaging in an unfair or fraudulent business practice in the future is insufficient to demonstrate that there is a reasonable probability that it will do so.

third-party batteries falls far short of alleging, with facts, a "'reasonable probability that the past acts complained of will recur.'" (*Colgan, supra*, 135 Cal.App.4th at p. 702.)  The second amended complaint's assertion that "[n]othing prohibits" Apple from doing something similar in the future also is insufficient to allege a reasonable probability of a recurrence.  Indeed, nothing prevents any defendant who voluntarily ceases complained of conduct from reinstating such conduct.  Yet absent a showing of a "'reasonable probability'" of a recurrence, a plaintiff is not entitled to injunctive relief under the UCL.  (*Ibid*.)

Finally, that it is "unclear" to plaintiff whether Apple's policy extends to devices other than iPhones also is irrelevant to the practice about which plaintiff complained, that is, Apple's policy of refusing to service *iPhones* with third-party replacement batteries and preventing the owners of such iPhones from taking advantage of the reduced-price battery replacement program.  We therefore conclude that plaintiff did not sufficiently allege an entitlement to injunctive relief.[5]

C.    *Leave to Amend*

Plaintiff alternatively argues that even if the trial court correctly sustained the demurrer, it should have granted him leave to amend.  "[I]t is an abuse of the trial court's discretion to sustain a demurrer without leave to amend if there is a reasonable possibility the plaintiff can amend the complaint to

_____

[5]    Because we find plaintiff failed adequately to allege entitlement to relief, we decline to consider the parties' arguments concerning the fraudulent and unfair prongs of the UCL.

11

allege any cause of action. [Citation.] To prove such abuse of discretion, however, the plaintiff must demonstrate how the complaint can be amended. [Citation.] While such a showing can be made for the first time to the reviewing court [citation], it must be made." (*Smith v. State Farm Mutual Automobile Ins. Co.* (2001) 93 Cal.App.4th 700, 711; accord, *Medina v. Safe-Guard Products, Internat., Inc.* (2008) 164 Cal.App.4th 105, 112, fn. 8.)

"'The plaintiff bears the burden of proving there is a reasonable possibility of amendment. [Citation.] . . . [¶] To satisfy that burden on appeal, a plaintiff "must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading." [Citation.] The assertion of an abstract right to amend does not satisfy this burden. [Citation.] The plaintiff must clearly and specifically set forth the "applicable substantive law" [citation] and the legal basis for amendment, i.e., the elements of the cause of action and authority for it. Further, the plaintiff must set forth factual allegations that sufficiently state all required elements of that cause of action. [Citations.] Allegations must be factual and specific, not vague or conclusionary. [Citation.]'" (*Rossberg v. Bank of America, N.A.* (2013) 219 Cal.App.4th 1481, 1491; *Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43–44.)

Here, plaintiff makes the bald assertion that he should have been allowed leave to amend because Apple's alleged misconduct was ongoing. Plaintiff, however, has failed to meet his burden of demonstrating, with factual and specific allegations, a reasonable possibility that he can cure the defects in the second amended complaint to state a viable UCL claim.

12

The trial court therefore did not abuse its discretion by denying him leave to amend.

## V. DISPOSITION

The judgment after an order sustaining the demurrer without leave to amend is affirmed. Defendant Apple, Inc. is entitled to recover costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KIM, J.

We concur:

BAKER, Acting P. J.

EDMON, J.*

---

\*      Presiding Justice of the Court of Appeal, Second Appellate District, Division Three, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

13